**UNITED STATES of America, Plaintiff-Appellant,**

v.

**DON B. HART EQUITY PURE TRUST, Don B. Hart and Mary Louise Hart, Defendants-Appellees.**

No. 86–1614.

United States Court of Appeals, Fifth Circuit.

June 16, 1987.

Nancy M. Koenig, Myrna B. Silen, Attys., Lubbock, Tex., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellant.

Martha A. Miller, Atlanta, Ga., for defendants-appellees.

Before WISDOM, WILLIAMS, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In this appeal the Small Business Administration (SBA) contends that the district court erred in granting summary judgment in favor of Don Hart Equity Pure Trust (Hart Trust) on a claim by the SBA for the payment of a deficiency judgment rendered against Hart Trust. We agree with the SBA and therefore reverse the court's granting of summary judgment in favor of Hart Trust.

### I.

The facts in this case were stipulated to by both parties. Don B. Hart and Mary

Louise Hart are farmers in Hansford County, Texas. Because of financial difficulties, on August 28, 1978, the Harts, through Hart Trust, sought and obtained a loan from the SBA. Hart Trust executed a promissory note in the amount of $157,400, payable to the SBA. That same day the Harts personally guaranteed the note, with the SBA obtaining a lien and an undivided interest in two properties owned by the Harts.

The loan called for repayment in annual installments of $18,452, due each January 15 from 1979 through 1988. Hart Trust made its first installment payment on January 15, 1979. It could not make the second payment on January 15, 1980, but the SBA agreed to defer the payment until July 15, 1980. When Hart Trust could not make that payment, the 1980 installment was deferred a second and final time until November 15, 1980. Hart Trust never paid this or any of the subsequent installments.

After Hart Trust failed to make the second installment payment, the SBA declared the note in default and accelerated the note so that the entire principal became due and payable. On September 7, 1982, the properties securing the note were sold at a foreclosure sale, and the proceeds were applied to Hart Trust's debt under the note. After the sale, Hart Trust owed an unpaid principal balance of $55,261.64. The SBA sought payment of this amount from the Harts and then instituted this action against them when the Harts refused to pay. During the service of the loan, the SBA did not at any time provide Hart Trust or the Harts with a written notice of the provisions for deferral and loan payment moratoriums found in 13 C.F.R. § 131.

After consideration of these facts, the district court concluded that SBA borrowers have a legal entitlement to loan deferral consideration, and that Hart Trust was denied that consideration without procedural due process. In reaching this conclusion, the court relied on cases interpreting deferral procedures used by the Farmers Home Administration (FmHA). The court noted that the FmHA cases were not binding authority, but because of the parallels between the language and purposes of the FmHA and SBA loan program statutes, the court felt justified in relying upon the FmHA cases when considering due process requirements in the SBA loan deferral program. The court concluded that the SBA should be held to the same due process standards that have been applied to the FmHA.

In examining FmHA cases, the court adopted the rule expressed in *Allison v. Black*, 723 F.2d 631, 634 (8th Cir.1983):

> The requirement of a request by the borrower prior to consideration for section 1981a relief presupposes that the borrower has knowledge of the availability of such relief. Notice to the borrower is therefore indispensable. In like manner, the requirement of a showing of prima facie eligibility is necessarily premised upon the expectation that some procedure will be provided under which the borrower may make the requisite showing. Thus, the rudimentary elements of adequate notice and an opportunity to be heard are embodied in the language of section 1981a.

Based on this language, the court held that Hart Trust should have received written notice of the deferral provisions, and that any constructive notice received by reason of obtaining deferrals was not sufficient. The court also concluded that even if sufficient notice was given, Hart Trust did not have an adequate opportunity to be heard, and thus the procedure used was still infirm.

The district court also was concerned with the lack of substantive standards by which a borrower's entitlement to deferral relief could be measured. The court criticized the program because the decision to extend deferral relief to a borrower was left to the discretion of the individual SBA loan officer. Thus, the court concluded that there was no safeguard to insure consistent administration of the loan deferral program.

Based on these factors, the district court concluded that Hart Trust

failed to receive due process under the provisions of the Small Business Act because [it was] not afforded a reasonable opportunity for meaningful administrative review of the decisions made by the local loan servicing officer. Meaningful review requires as a minimum the promulgation of standards to be used in measuring deferral rights under the statute, personal notice to borrowers of the availability of and the standards governing deferral, and finally, personal notice of the proper procedure for appealing the loan servicing officer's decision.

For these reasons, the court granted summary judgment in favor of Hart Trust.[1]

The SBA now appeals, arguing that (1) this circuit's unpublished opinion, *United States v. Parr*, 793 F.2d 1288 (5th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 320, 93 L.Ed.2d 293 (1986), controls and requires reversal; (2) that due process in the SBA loan program context does not require personal notice of the availability of deferral relief and a meaningful opportunity to be heard; (3) that the FmHA line of cases, and the standards developed in those cases, are not applicable to the SBA; (4) that the SBA does not administer its deferral program in an ad hoc, discretionary, or inconsistent manner; (5) that the district court erred in giving probative value to the terms of the settlement agreement adopted in *Stone;* and (6) that the court erred in holding that the SBA was not entitled to a deficiency judgment. We address these contentions below.

## II.

First, we find that *Parr* controls the first three issues.* Under *Parr*, Hart Trust does not have the right to receive actual written notice of the deferral program and an opportunity to be heard in order for the SBA to have complied with procedural due process standards. *Parr* also prevents

Hart Trust from relying upon FmHA cases as support for that position.

In *Parr* the borrowers were farmers in Frio County, Texas, and were unable to maintain their obligations under the SBA Disaster Loan Program (the same program involved in the instant case). The Parrs took out two loans with the SBA. The payments on the first loan were deferred three times for a total of 15 months, and the payments on the second loan were deferred twice for a total of 18 months. Eventually the SBA decided to accelerate the loans and place the Parrs in default. The Parrs never tendered a single payment on either of the two loans.

The Parrs argued that (1) the United States had an obligation to continue to extend credit to them because the SBA assured them that their loan obligations would be deferred if they could not make their payments; and (2) that the United States could not accelerate their loans without giving them notice and an opportunity to be heard.

This court found neither argument to be persuasive. As to the Parr's claim for procedural due process, the court held that

people are charged with knowledge of the contents of federal regulations, just as they are charged with knowledge of statutory law. *See Federal Crop Insurance Co. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Thus, officers of the United States were not responsible for informing the Parrs of any right to loan deferrals before acceleration.

As for the Parrs' claim that they did not receive notice, the court found that

even if the United States did have an obligation to inform the Parrs of the availability of deferrals, the Parrs were so informed. In fact, the Parrs received three deferrals on the first loan and two deferrals on the second.

1. The court noted in conclusion that the SBA had already implemented a program in Georgia pursuant to a settlement entered in *Stone v. Cardenas,* Civil Action No. CV 281–122 (S.D.Ga.

1982), that would go a long way towards satisfying the procedural defects it had found.

* The *Parr* opinion is reprinted in full in the appendix to this opinion.

Finally, the court dismissed the Parrs' claim that the government had any duty to continue to make loans to the Parrs, noting that no such obligation was contained in the written promissory notes signed by the Parrs.

■ The facts of *Parr* correspond almost exactly with the facts of the instant appeal. In both cases, after having received deferrals, the borrowers were still unable to pay back the loans. The SBA eventually declared the loans to be in default and foreclosed upon the property. In both cases the borrowers argued that due process required that they receive actual notice of the deferral program and an opportunity to be heard on the issue of deferrals. In *Parr* we rejected that claim, and, therefore, we must follow that precedent and also reject such a contention in the present case.

■ Hart Trust attempts to minimize *Parr*'s impact through three arguments. First, it contends that *Parr* has no precedential value. However, there is no merit to this assertion. Although *Parr* is unpublished, it is binding precedent. 5th Cir.R. 47.5.3. Moreover, even if we were to disagree with the conclusion reached in *Parr*, we cannot overrule another Fifth Circuit panel absent an overriding Supreme Court decision or a change in statutory law. *Girard v. Drexel Burnham Lambert, Inc.*, 805 F.2d 607, 610 (5th Cir.1986). Thus, we are bound by *Parr*. Because *Parr* is binding precedent, we are not at liberty to consider the potential applicability of the FmHA line of authority.

■ The second argument made by Hart Trust, which is related to the first, is that this court erred in the holding in *Parr* that the "SBA has no affirmative obligation to permit its borrowers to exhaust loan options as condition precedent to bringing collection actions against them." As we stated above, this panel is bound by the *Parr* holding that the SBA has no such obligation.

Finally, Hart Trust attempts to distinguish *Parr* factually by asserting that, unlike the Parrs, Hart Trust did not receive actual deferrals. Instead, appellee argues that it received "informal extensions which provided them no loan servicing assistance." We do not find any support that the alleged "informal extensions" were not deferrals. The relevant deferral provisions are contained in 13 C.F.R. §§ 131.2 and 131.3. Section 131.2 provides: " 'Deferment' means the procedure whereby a lender (participant or SBA) suspends a borrower's obligation to make payments on a loan for a stated period." Section 131.3(b) provides: "When SBA has decided to suspend payment on a direct ... loan, a deferment will be approved under administrative procedures, and payment by borrower will not be required for a stated time period." In the present case, we believe the "informal extensions" were deferrals. Hart Trust had its payment obligations suspended for a stated period of time. We find no merit to Hart Trust's attempted distinction.[2]

In sum, we hold that we are bound by *Parr* to conclude that due process does not require personal written notice of the availability of deferral relief and an opportunity to be heard on that issue. Also, our reliance on *Parr* precludes the ability of this court to find such obligations based upon FmHA loan deferral cases.

## III.

The next issue we must consider is whether the SBA administers its deferral program in a discretionary, inconsistent, and ad hoc manner. Regarding this issue the district court held:

In addition to the lack of procedural safeguards, this Court is concerned with the apparent lack of substantive standards whereby a borrower's entitlement to deferral relief can be measured. While the statute itself provides some general guidance for applying the suspension provisions of the statute, the Ad-

---

**2.** Hart Trust also seems to contend that a true deferral entails a period when interest does not accrue on the amount due and payable. Since it only received postponement periods during which interest continued to accrue, it did not receive a true deferral. We also find no statutory or regulatory basis for this distinction and decline to adopt it.

ministrator has failed to generate uniform criteria to aid the various SBA offices in the exercise of the discretion granted by the statute. In essence, the decision to extend deferral relief to a given borrower is left to the unguided inclinations of the individual SBA loan servicing officer. Thus, the SBA provides no safeguards to insure the consistent administration of the loan deferral relief provisions. [footnotes omitted].

In *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055 [39 L.Ed.2d 270] (1974), the Supreme Court stated that

> The power of an administrative agency to administer a Congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.... No matter how rational or consistent with Congressional intent a particular decision might be, the determination of eligibility cannot be made on an *ad hoc* basis by the dispenser of the funds.

415 U.S. at 231 [94 S.Ct. at 1072]. The present record reflects exactly that. After several informal extensions were granted *pro forma* at the request of the borrower, the SBA reversed its course, declined to grant any further extension, and proceeded to accelerate defendants' note without any apparent evaluation of defendants' situation in light of the deferral provisions of the statute. Such a course is unacceptable given the expressed intention of Congress to make deferral relief available to SBA borrowers when confronted with the circumstances described in the statute.

First, we note that the SBA deferral program is designed to be discretionary. The statutory framework for deferral provides:

> (2) The Administration may undertake or suspend for a period of not to exceed 5 years any small business concern's obligation under this subsection *only* if—
>
> (A) without such undertaking or suspension of the obligation, the small business concern would, *in the sole discretion* of the Administration, become insolvent or remain insolvent;
>
> (B) with the undertaking or suspension of the obligation, the small business concern would, *in the sole discretion* of the Administration, become or remain a viable small business entity; and
>
> (C) the small business concern executes an agreement in writing satisfactory to the Administration as provided by paragraph (4).

15 U.S.C. § 634(e)(2) (emphasis added). The legislative history of this statute confirms this view:

> The Senate bill basically gives SBA the same authority [as that of the House bill] except that *it would be discretionary rather than mandatory to grant the moratorium.* The Senate bill also limits eligibility to borrowers who are still viable prior to the granting of the suspension and authorizes the SBA to require the borrower to take such action as is appropriate to assure that the rights and interests of the lender will be safeguarded.
>
> The conference substitute adopts the Senate provision but extends eligibility to small businesses which have already become insolvent providing that with the moratorium the small business could again become a viable entity.

(emphasis added). H.R.Conf.Rep. No. 95–535, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Ad.News 821, 843, 848.

█ The district court, however, was concerned that while the decision to extend a deferral may be discretionary, there are not any uniform criteria to aid the various SBA offices in the exercise of its discretion. Thus, the decision of whether to extend deferral relief to a borrower is left to the unguided inclinations of the individual SBA officer, giving rise to potential inconsistent results. We disagree. While there is a certain degree of unguided discretion, that discretion was purposefully added to the deferral program. Moreover, the SBA is

not completely unguided in its administration of the program. The statute does provide the parameters of when the SBA may defer repayment of a loan. It may do so only if (1) without such suspension of the obligation the business would become insolvent or remain insolvent, (2) with such suspension the business would become or remain a viable business, and (3) the business executes a repayment agreement. 15 U.S.C. § 634(e)(2). Only when these three criteria are met is the business entitled to deferment, and even then at the discretion of the SBA. Thus, we do not believe that the SBA is left to its *unguided* inclinations in deciding when deferral is proper.[3]

■ Finally, the district court was concerned that the deferral program in the instant case was implemented in an ad hoc manner, without any evaluation of Hart Trust's situation. The facts of this case belie such a contention. In January 1979 Hart Trust requested a 90–day extension for making the January 1979 payment. This request was granted, and even then payment was not made until November. In April 1980 Hart Trust requested a deferral for the second payment that was due in January 1980. This payment was deferred until July 1980. Hart Trust then requested a deferral until November 1980, which was also granted. This payment, however, was never made.

In May 1981 the SBA sent Hart Trust a collection letter requesting that the loan be brought up to date or that other arrangements be made. In June 1981 the SBA demanded payment of the loan. Hart Trust responded in July 1981, requesting that the SBA delay taking any action pending its obtaining another loan that would be used to pay the SBA. Still, no payment was made. In December 1981 the SBA made another demand for payment; payment was not made. In April 1982 the SBA contacted a representative of Hart Trust regarding the loan and agreed to delay taking any liquidation action after being assured that payment would soon be made. It was not.

Finally, after being in default over two years, on May 10, 1982, the SBA accelerated the loan. The Hart's property securing the loan was sold on September 7, 1982. Then, in November 1982 the SBA wrote the Hart's demanding payment of the balance of the loan that was not satisfied by the sale of the property. In this letter, the SBA still offered to accommodate the Hart's if they were still having financial difficulties.

These facts illustrate that the SBA did not administer Hart Trust's loan in an ad hoc manner without any evaluation of its financial situation. On the contrary, the SBA was patient and accommodating, and it complied with its rules and regulations. The SBA gave Hart Trust more than an adequate opportunity to try to work out a repayment plan. We find no merit to this claim.

## IV.

The SBA next contends that the district court erred in giving probative value to the terms of the settlement agreement adopted in *Stone*. We believe that the SBA has incorrectly interpreted the court's discussion of *Stone*. We do not think that the court relied on *Stone* for its holding; rather, the court merely noted that the "SBA has already implemented a program in Georgia pursuant to a settlement entered in the case of *Stone v. Cardenas* . . . which would go a long way towards satisfying the procedural defects noted by the Court in this opinion." (footnote omitted). We do not read this statement as one indicating a reliance by the court on *Stone* for its holding. Instead, the court is merely suggesting a solution to the problems it identi-

---

**3.** We do recommend, as the district court also does, that the SBA implement procedures similar to those established in *Stone v. Cardenas,* Civil Action No. CV 281–122 (S.D. Georgia 1982). First, such procedures will benefit both the SBA and the borrower. The SBA would then have a guide for determining exactly how much service to provide a borrower in its loan deferral program. Finally, such an addition would merely be implementing an existing practice. Also, such a procedure will, without doubt, notify the borrower of the deferral program and of the limits of the SBA's service.

fied. Therefore, we do not address the SBA's argument of whether the district court erred in giving probative value to *Stone*. Instead, we dismiss the discussion relating to *Stone* as dicta.

## V.

The SBA's final argument is that the district court erred in not granting summary judgment in its favor, holding that it was entitled to a deficiency judgment. We agree. In this case, both parties agreed to submit the case for summary resolution based on the stipulated facts and trial briefs. Since we hold that the district court erred in granting summary judgment in favor of Hart Trust, judgment must now be entered in favor of the SBA.

## VI.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case to the court to enter judgment in favor of the SBA.

## APPENDIX

### UNITED STATES OF AMERICA,
Plaintiff-Appellee,

versus

### BRUCE EDWARD PARR and GRACE M. PARR, Defendants-Appellants.

No. 85–1424

### IN THE UNITED STATES COURT OF APPEALS

### FOR THE FIFTH CIRCUIT.

June 24, 1986

Appeal from the United States District Court for the Northern District of Texas

Before CLARK, Chief Judge, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge: *

In 1978 and 1979, Bruce and Grace Parr (the Parrs) borrowed money from the United States through the Small Business Association (SBA) Disaster Loan Program. Although the SBA deferred repayment of these loans several times, the Parrs were unable to tender their required payments. In April 1982, the SBA accelerated the notes and in March 1983 brought this action against the Parrs to recover the amounts due. The Parrs, acknowledging their indebtedness, asserted three affirmative defenses. Prior to trial, the district court struck two of these defenses and allowed the case to proceed to trial before a jury on the remaining defense. At the close of all evidence, the district court granted the United States' motion for directed verdict and entered judgment for the United States.

On appeal, we are asked to determine whether the district court erred either by striking the two affirmative defenses or by granting the directed verdict for the United States. As we find no error, we affirm.

## I.

### A.

The Parrs have been farmers in Frio County, Texas for over forty-four years. After suffering substantial financial losses, the Parrs, upon the recommendation of a local banker, investigated the possibility of obtaining loans from the SBA Disaster Loan Program. According to the Parrs, SBA officials advised them that the Disaster Loan Program was not a "one shot" situation, but rather that the SBA would continue to lend operating funds in the future. The Parrs also contend that the SBA officials represented that payments due during disaster years would be deferred or restructured and that repayment of the loan would be conditioned upon normal production.

* Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the court has determined that this opinion should not be published.

Based on these representations,[1] on December 15, 1978, the Parrs borrowed $189,-000 at three percent interest from the SBA. The loan was evidenced by a promissory note which stated that the first payment was due on April 1, 1980. The Parrs continued to suffer financial stress and thus on May 17, 1979, borrowed an additional $195,000 at three percent interest from the SBA. This debt, also evidenced by a promissory note, required the first payment to be tendered on February 1, 1980. On January 24, 1980, the SBA deferred payment on the loan until August 1, 1980.

Meanwhile, the April 1 repayment date on the first loan was quickly approaching and the Parrs were still in financial straits. Unable to make the loan payments from the proceeds of their farm production, the Parrs applied for yet another loan [2] and the SBA agreed to defer payment until October 1, 1980. Both the August 1, 1980 repayment date for the second loan and the October 1, 1980 repayment date for the first loan passed without payments by the Parrs. On October 21, 1980, the SBA notified the Parrs that they had been allowed duplicated benefits and demanded repayment of $13,809; the SBA also reminded the Parrs that payments on both loans were past due. On November 6, 1980, the Parrs repaid the $13,809, but did not tender any payments due on either loan.

On November 25 and December 5, the SBA wrote the Parrs that repayment on the first loan was again being deferred, this time to April 1, 1981. The SBA notified the Parrs, however, that both loans were seriously delinquent. The Parrs still did not tender payment on the second loan, even though the date for the second payment on this loan, February 1, 1981, was approaching. Without ever having received the first payment which was due on August 1, 1980, the SBA deferred the second payment from February to August 1981.

The April 1, 1981 repayment date for the first loan passed without any repayment. On May 13, the SBA deferred for the third time the first payment on the first loan to July 1, 1981. When this date passed without payment, the SBA wrote to the Parrs, requesting payments on August 12, August 25, September 4, and October 1, 1981. In addition, the August 1, 1981 repayment date for the second note also passed without payment. On October 21, the SBA wrote the Parrs about these overdue payments, and on November 19, notified the Parrs that both debts were being accelerated. Acceleration letters were sent again on April 1, 1982. Except for the repayment of $13,809 to return duplicate benefits, the Parrs failed to tender a single repayment under either loan.

### B.

On March 7, 1983, the United States, on behalf of the SBA, brought suit against the Parrs, seeking to recover the amounts due on both loans. The procedural aspects of this action, extending over more than two years, are complex and not relevant to the outcome of this appeal. From the important thrusts and parries, we note that the Parrs admitted executing both promissory notes and receiving demands for payment, but contended that the terms of the contract included representations made to them by SBA officials at the time these loans were negotiated, and that the United States was in default on these additional contract terms which caused the Parrs to sustain monetary damages that more than offset the amount owing to the SBA. Thus, to offset the United States' prima facie case, and as recoupment for the Parrs' loss, the Parrs, in the second amended pretrial order, asserted the following three affirmative defenses:

1. Defendant asserts that he suffered crop disasters in 1977, 1978, 1979 and 1980. He obtained loans for the first two disasters and processed application

---

**1.** The district court did not state any reasons when granting the directed verdict. Thus, on appeal we review all the evidence in the "light and with all reasonable inferences most favor-able to the" Parrs. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

**2.** This loan application was subsequently denied.

for the third and fourth. The third application was granted and funding was refused by local SBA officials. Defendant contends that this action caused his default and is an offset in law and equity.

2. Defendants assert that the Plaintiff is estopped from liquidating, accelerating or otherwise attempting to foreclose without first giving defendants notice and opportunity to request deferral in accord with Title 13 C.F.R. and that such action by plaintiff would violate defendants' constitutional right to due process under the Fifth Amendment.

3. Defendants assert that Plaintiff is in material breach of the contract between the parties and that the defendants are not obligated to further performances under the contract.[3]

On April 19, 1985, the United States moved to strike these defenses under Federal Rule of Civil Procedure 12(f). On May 7, 1985, the district court partially granted the United States' motion to strike, leaving the Parrs with only their third affirmative defense. The court also granted the United States' motion in limine, preventing the Parrs from introducing evidence or testimony regarding rejected loan applications filed by the Parrs with the SBA after the first and second loans were executed.

A jury trial began on May 7, focusing primarily on the Parrs' assertion that the United States was in material breach on the contract between the parties. The United States established its prima facie case of the Parrs' indebtedness on the 1978 and 1979 loans and rested its case. The Parrs then offered testimony by seven witnesses to show that additional representations, not apparent on the face of the written agreement, were made to the Parrs and that these representations were material terms of the loan agreement. After the Parrs rested their case, the United States offered no rebuttal evidence. After arguments by the parties, the district court granted the United States' motion for a

directed verdict, and ordered that the United States recover from the Parrs $437,-478.14, plus interest. The Parrs filed a timely notice of appeal.

## II.

### A.

The Parrs raise two issues on appeal. First, the Parrs contend that the district court erred as a matter of law in striking their first two affirmative defenses. Second, the Parrs argue that the district court erred in granting the United States' motion for a directed verdict.

### B.

The Parrs assert two reasons why it was error for the district court to strike two of their affirmative defenses before trial. First, the Parrs contend that the United States' motion to strike was untimely as it was filed more than twenty days after the Parrs' pleading was served on the government. *See* Fed.Rule of Civ.Pro. 12(f). While the Parrs accurately assess the time periods involved, we note that they did not raise this issue to the district court when responding to the United States' motion to strike. Since issues not raised below will generally not be considered on appeal, we decline to reverse the motion to strike on this ground.

The Parrs' second contention is that the district court erred in finding the affirmative defenses insufficient as a matter of law. The first defense asserts that the Parrs defaulted on their loans because applications for a third and fourth loan were denied. Clearly, this defense is legally insufficient because a decision not to extend further credit does not offset an already existing obligation, unless the creditor has an obligation to lend additional funds. The Parrs' contention that the United States did have such an obligation is the sole basis of the third affirmative defense. *See infra* p. 1250. Since the first and third defenses,

---

3. In their brief, the Parrs list the affirmative defenses included in the original pretrial order entered into on March 15, 1985. These defenses were modified in a second pretrial order en-

tered into on May 6, 1985. The order to strike and the trial properly relied on only the defenses contained in the May 6 order. On appeal, we consider only these defenses.

when examined, are overlapping, the district court's decision to strike the first defense was not an abuse of discretion.

The second affirmative defense contends that the United States is estopped from accelerating debts on the loans without first giving the Parrs notice and an opportunity to request deferrals. We find this defense difficult to understand. First, the Supreme Court has held that people are charged with knowledge of the contents of federal regulations, just as they are charged with knowledge of statutory law. *See Federal Crop Insurance Co. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Thus, officers of the United States were not responsible for informing the Parrs of any right to loan deferrals before acceleration. Second, even if the United States did have an obligation to inform the Parrs of the availability of deferrals, the Parrs were so informed. In fact, the Parrs received three deferrals on the first loan and two deferrals on the second. Since the Parrs had actual notice of their right to receive deferrals, any claim for not being informed of this right is moot. Thus, the district court properly granted the motion to strike the Parrs' second affirmative defense.

### C.

The Parrs' second contention on appeal is that the district court erred as a matter of law when it granted the United States' motion for a directed verdict. The Parrs' claim seems to be that the contract between the Parrs and the SBA included assurances that the SBA would not require any payments on the loans during disaster years and that the SBA breached this agreement. As a result of this alleged breach, the Parrs assert, they have a valid set-off against the SBA's prima facie case. We disagree.

We do not decide what representations, if any, were made to the Parrs because, even if the asserted representations were made, they do not become terms of the loan agreement between the SBA and the Parrs. "Regardless of the strong moral implications, it is well established that the Government is not bound by the unauthorized or incorrect statements of its agents." *Posey v. United States*, 449 F.2d 228, 234 (5th Cir.1971). *Accord United States v. R & D One Stop Records, Inc.*, 661 F.2d 433, 434–35 (5th Cir.1981). Since no terms could have been added to the written promissory notes beyond those authorized by federal regulation, and since the SBA complied with its own regulations, any unauthorized or incorrect representation made to the Parrs did not become terms of the loan agreement.[4] Thus, the district court properly granted the United States' motion for directed verdict because, as a matter of law, the Parrs had no defense to the government's complaint.

### III.

We find that the district court did not err in striking two of the Parrs' affirmative defenses to the United States' prima facie case. Since there was no error in granting the directed verdict in favor of the United States, the judgment of the district court is AFFIRMED.

---

**4.** The Parrs vigorously assert that since the United States did not specifically advance this argument when moving for a directed verdict, this court cannot affirm on this ground. We disagree. "The prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970).