UNITED STATES of America, Plaintiff,

v.

**APPLIED COMPUTER SERVICES, INC.; Russell G. Johnston; the City of Hutchinson; Unisource; Lawrence Photographic, Inc.; Xerox Corp.; Miller–Cooper Company; First National Bank of Hutchinson; Reno County Board of County Commissioners, Defendants.**

No. 97–1244–JTM.

United States District Court, D. Kansas.

May 27, 1998.

Stephen K. Lester, Jackie N. Williams, Office of U.S. Atty., Wichita, KS, for Plaintiff.

Dan W. Forker, Jr., Reynolds, Forker, Berkley, Suter, Rose & Dower, Hutchinson, KS, for Russell G. Johnston.

Porter K. Brown, City of Hutchinson, Kansas, Hutchinson, KS, for City of Hutchinson.

Gregory L. Musil, Shughart, Thomson & Kilroy, Overland Park, KS, Donald H. Loudon, RIchard M. Paul, III, Shugart, Thomson & Kilroy, P.C., Kansas City, MO, for Lawrence Photo Graphic Inc.

Joseph P. O'Sullivan, III, Leslie, O'Sullivan, McCarville & Brown, Hutchinson, KS, for Reno County Bd. of County Commissioners.

Gordon E. Wells, Jr., Lathrop & Gage L.C., Overland, KS, for Miller–Cooper Co.

J. Stanley Hill, Branine, Chalfant & Hill, Hutchinson, KS, for First Nat. Bank of Hutchinson.

### MEMORANDUM ORDER

MARTEN, District Judge.

The United States of America sued Applied Computer Services, Inc. (ACS) and Russell G. Johnston, as well as a number of other defendants, seeking to recover on two loans to ACS guaranteed by the Small Business Administration (SBA) and one loan to ACS issued by the SBA. The government moves for summary judgment against ACS and Johnston for the amount due on the loans.

### I. Summary Judgment Standard.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the initial showing has been made, the burden shifts to the non-moving party to designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. A party may not rely on the allegations of its pleadings but must establish the existence of a genuine issue of material fact through admissible evidence. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied,* 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). When determining whether there is a material issue of fact, the nonmoving party's evidence is to be believed; all justifiable inferences are to be drawn in its favor; and its nonconclusory version of any disputed issue of fact is assumed to be correct. *Multistate Legal Studies, Inc. v. Harcourt Brace Publ., Inc.,* 63 F.3d 1540, 1545 (10th Cir. 1995), *cert. denied,* 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996).

### II. Facts.

The facts of this case are largely uncontested. On September 3, 1985, and October 11, 1985, Hutchinson National Bank and Trust Co. (HNB) made loans to ACS of $65,000 and $145,000. ACS signed two notes to secure the loans. The $65,000 loan had an annual interest rate of 12.75% and was to be repaid in monthly installments of $750 over 20 years. The $145,000 loan had an annual interest rate of 12–7/8% and was to be repaid in monthly installments of $1,765 over 17 years.

On October 18, 1991, SBA made a direct loan to ACS for $325,000. ACS executed a note requiring it to make monthly payments of $3,139 for 10 years. The annual interest rate was 3%.

ACS executed three mortgages to secure the loans. The mortgages were filed of record in the Office of the Register of Deeds for Reno County. All three mortgages covered the following real estate:

Lots One (1), Three (3), Five (5), Seven (7), Nine (9), and eleven (11), Avenue B East, Original Town, now City of Hutchinson, Reno County, Kansas.

The $65,000 loan also was secured by five security agreements dated September 3, 1985; March 17, 1986; March 25, 1987; December 29, 1987; and December 31, 1987. The security agreements covered inventory, equipment, accounts, and general intangibles. Each of the security agreements were duly perfected and are existing liens on ACS's property. On February 14, 1997, the security agreements were assigned to the SBA.

The $325,000 loan also was secured by a perfected security interest in ACS's machinery, equipment inventory, contract rights, furnishings, furniture, inventory, general intangibles, accounts receivables and vehicles. The security interest is an existing lien on ACS's property.

Johnston, president of ACS, executed three unconditional guarantees to secure the three loans. The guarantee agreements are dated September 3, 1985, October 11, 1985, and October 7, 1991. The first two guarantees were made in favor of HNB and were assigned to the SBA on February 14, 1997. The third guarantee was made in favor of the SBA.

The mortgages of August 12, 1985, and September 3, 1985, were made in favor of HNB and assigned to the SBA on February 14, 1997.

ACS stopped making regular payments on the three loans in the Spring of 1996.[1] The last regular payment on the $65,000 loan was made on April 15, 1996. The last regular payment on the $145,000 loan was made on April 23, 1996. The last regular payment on the $325,000 loan was made in February, 1996.

On February 11, 1997, Douglas K. Clary of the SBA wrote Johnston, advising him that the SBA's direct loan was in default and the installments were being accelerated. Demand was made for the balance of $208,028.60.

On March 14, 1997, Clary again wrote Johnston, advising him that the $65,000 and $145,000 loans were in default and the installments were being accelerated. Demand was made for payment in full of the outstanding balances of $52,519.55 and $95,812.91, respectively. Each of the letters calling the loans advised Johnston that acceptance of partial payments was not to be construed as a reinstatement of the maturity and would not cancel the acceleration and demand for payment.

A payment of $3,139 was credited to the $325,000 loan on March 17, 1997.[2] As of May 8, 1997, the balance due on the loans was as follows: (1) the $65,000 loan—$49,122.05 principal, $4,368.40 interest; (2) the $145,000 loan—$95,812.41 principal, $8,572.49 interest; and (3) the $325,000 loan—$201,856.81 principal, $4,459 .61 interest. The total balance due was $346,791.27 in principal and $17,400.50 in interest with a daily accrual of $67.55.[3]

SBA contends that ACS is presently insolvent and that its financial condition deteriorated between 1995 and 1996. SBA further

---

1. ACS and Johnston dispute this statement, but fail to cite any evidence to the contrary. Johnston in his affidavit states that payments were made on January 24, 1997, and February 10, 1998, but fails to indicate the amount of the payments. The SBA admits in its reply that ACS made payments of $3,139 in January 1997, and $2,097 in February 1998.

2. This is apparently the January, 1997, payment.

3. SBA provides two different figures for the total principal due on the loans—one in the brief in support of the motion for summary judgment and another in Clary's supporting declaration. Neither figure is a correct total of the three individual loans. ACS and Johnston did not dispute the SBA's totals. The court has calculated the total principal due by adding the principal due on the individual loans.

contends that extending repayment of the loans, even for a period of ten years beyond the original maturity date, would not allow ACS to become solvent or otherwise aid in the orderly repayment of the loans. SBA cites Clary's declaration in support. Clary indicates he reviewed ACS's financial data in reaching these conclusions.

ACS and Johnston contend that ACS is solvent and that a moratorium on payments would allow ACS to remain solvent and would aid in the orderly repayment of the loans. ACS and Johnston cite an affidavit from Johnston. In the affidavit, Johnston never expressly states that ACS is solvent or that a moratorium on payments would allow ACS to remain solvent and would assist with the orderly repayment of the loans. Johnston states that ACS is "an operating and vital business concern."

Johnston also says he made a request for the procedure to apply for a loan deferral in May, 1996. He claims the SBA refused to allow ACS to submit an application, and failed to provide ACS with written documentation of the denial, justification for the denial, or ACS's right to appeal.

In its brief in opposition, ACS asserts that it made a written request for a deferral in May, 1997, and that the request was denied, apparently orally. ACS provided no citation for this assertion.

On May 29, 1997, the SBA filed this action. The SBA contends that Johnston did not raise the issue of deferment until June 1997.

### III. Analysis.

The SBA argues it is entitled to summary judgment for full payment of the loans plus interest. ACS and Johnston assert that the SBA is not entitled to summary judgment because (1) ACS requested a deferral of the loans and was denied due process in the SBA's handling of its application; (2) ACS was denied certain loan servicing priorities that it was entitled to as a business certified under Section 8(a) of the Small Business Act.

### A. Due Process Regarding the Deferral Request.

ACS and Johnston argue the SBA denied them their due process rights when it failed to grant ACS a deferment under 15 U.S.C. 634(e)(1). The thrust of the argument appears to be that the SBA failed to respond in writing to ACS's request for a deferment and instead accelerated the loans and brought this action. Section 634(e) provides in part as follows:

(e) Undertaking or suspension of payment obligation; period; extension of maturity; repayment agreement; "required payments" defined

(1) Subject to the requirements and conditions contained in this subsection, upon application by a small business concern which is the recipient of a loan made under this chapter, the Administration may undertake the small business concern's obligation to make the required payments under such loan or may suspend such obligation if the loan was a direct loan made by the Administration. While such payments are being made by the Administration pursuant to the undertaking of such obligation or while such obligation is suspended, no such payment with respect to the loan may be required from the small business concern.

(2) The Administration may undertake or suspend for a period of not to exceed 5 years any small business concern's obligation under this subsection only if—

(A) without such undertaking or suspension of the obligation, the small business concern would, in the sole discretion of the Administration, become insolvent or remain insolvent;

(B) with the undertaking or suspension of the obligation, the small business concern would, in the sole discretion of the Administration, become or remain a viable small business entity; and

(C) the small business concern executes an agreement in writing satisfactory to the Administration as provided by paragraph (4).

ACS and Johnston also rely on the SBA's Standard Operating Procedure 80 05 2 and 13 C.F.R. § 131.4 (1995). They failed to provide the court with a copy of SOP 80 05 2 or to cite language from this procedural

guideline. Accordingly, they have not established that Standard Operating Procedure 80 05 2 entitles them to avoid summary judgment.

Through March of 1996, 13 C.F.R. § 131.4 was the regulatory implementation of 15 U.S.C. §§ 634(b)(6) and 634(e). This regulation does not require the SBA to hold a hearing or to issue a written decision if a request for a moratorium is denied. It follows the language of the statute and imposes an additional requirement before the SBA can grant a moratorium—that the lender has granted a deferment of at least 6 months to the borrower and in the opinion of the SBA and the lender, the deferment was beneficial.

The Fifth Circuit has held that 15 U.S.C. § 634(e) creates no due process rights to notification of the moratorium program and no right to a hearing before the SBA begins collection efforts. *United States v. Don B. Hart Equity Pure Trust,* 818 F.2d 1246, 1249 (5th Cir.1987). The court went on to note that the statute is intended to give the SBA discretion in deciding whether to grant forbearance. 818 F.2d at 1250–52. The Eighth Circuit has held that where the SBA considered a borrower's financial condition before deciding to foreclose on a loan, the SBA did not abuse its discretion in failing to allow the debtor additional forbearance under § 634(e). *United States v. Day,* 857 F.2d 1184, 1184–85 (8th Cir.1988).

Here, the SBA waited more than nine months after ACS stopped making regular payments before declaring the loans in default and accelerating the debt. The SBA waited four more months before bringing the present action. ACS has provided no proof of a formal application for forbearance, either prior to the decision to accelerate the loans or after the decision. The SBA has provided evidence that it determined ACS was insolvent and would not benefit from a forbearance, and thus ACS was ineligible for forbearance under § 634(e). Under *Hart,* ACS and Johnston have failed to establish a violation of ACS's due process rights. The court does not find the alleged failure of the SBA to provide a written denial significant, especially where there is no evidence of a written application. Furthermore, under *Day,* ACS

and Johnston have failed to establish that the SBA abused its discretion in denying an application for a moratorium on the basis of ACS's insolvency. Johnston's self-serving declaration that ACS is an operating and vital business concern does not raise a material question of fact as to whether the SBA abused its discretion.

Accordingly, the court finds that the failure of the SBA to approve a moratorium on ACS's debt does not act as a bar to the SBA's collection efforts.

**B. Loan Servicing Priorities Under Section 8(a).**

ACS argues that it was entitled to certain loan servicing priorities because of its status as a certified minority small business under Section 8(a) of the Small Business Act. ACS argues that the SBA is barred from seeking recovery on the loans because it failed to provide the required services.

ACS fails to specifically identify the services the SBA failed to provide and how providing the services would have allowed ACS to avoid default. To the extent ACS is referring to an entitlement to notification of the SBA's discretionary authority to grant a forbearance, under *Hart,* ACS is not entitled to such notification. In any event forbearance would have been denied and according to ACS, was in fact denied.

To the extent ACS and Johnston are referring to the SBA's Standard Operating Procedures, they failed to provide the court with a copy of the procedures and an explanation of how the SBA failed to follow the procedures. ACS and Johnston simply ask the court to blindly accept their conclusory allegations that the procedures were not followed and that the SBA failed to comply with a statutory duty to provide assistance. This the court will not do. Similarly, ACS and Johnston assert that the SBA failed to comply with 13 C.F.R. § 124. They fail to explain how the SBA violated this regulation, or even to identify which of the approximately 70 subparts the SBA allegedly violated.

Here, the SBA guaranteed two loans and directly issued a third loan to ACS. The SBA waited more than nine months after the last

regular payment to begin collection efforts. ACS and Johnston have failed to establish that the SBA failed to comply with a statutory duty to provide assistance. *See United States v. Althoff,* 16 F.3d 417 (10th Cir.1993) (table)(affirming district court's ruling that conclusory allegations that the SBA failed to comply with a statutory duty to provide assistance were insufficient to preclude summary judgment), *cert. denied,* 513 U.S. 836, 115 S.Ct. 116, 130 L.Ed.2d 62 (1994).

Accordingly, the court finds ACS and Johnston have failed to raise a material question of fact regarding whether the alleged failure of the SBA to comply with a statutory duty bars the SBA collection efforts.

C.   Conclusion.

IT IS ACCORDINGLY ORDERED this 27th day of May, 1998, that the United States's motion for summary judgment against defendants ACS and Johnston is granted.   A hearing will be held on June 10, 1998 at 11:00 a.m., to determine the principal balance due on the notes and compute the accrued interest.   In its motion, the United States did not ask the court to determine the priorities of the security interests involved or to order a sale of the property securing the loans and disbursement of the sale proceeds. Accordingly, the court declines to address these questions at this time.