**FRUTH v. GASTON.**

No. 9479.

Court of Civil Appeals of Texas. Austin.

April 18, 1945.

Rehearing Denied May 9, 1945.

582

Wm. Kay Miller and David L. Tisinger, both of Austin, for appellant.

Polk Shelton and Goldsmith & Bagby (by Arthur P. Bagby, Jr.), all of Austin, for appellee.

BAUGH, Justice.

Appellant sued appellee for an accounting and to recover $8,750 compensation alleged to be due him for services rendered under an employment contract with appellee between September 1, 1937, and December 24, 1942. The contract alleged was that he was employed by appellee as salesman, buyer and manager of the men's furnishing department of appellee's dry goods business in Austin, Texas, on an agreed compensation of $42.50 per week salary, and in addition thereto ¼% of the gross sales of his department for managerial duties; ¾% for buying and selling; and a reasonable percentage, not to exceed 5% of the net profits from his department, such percentage to be thereafter agreed upon.

Appellee, in addition to pleas in abatement, special exceptions, and general and special denials, pleaded the statute of frauds, statutes of limitation of two and four years, laches, estoppel, full settlement with appellant; and that under their contract appellant was not to be paid any salary at all, but only on an agreed commission basis; and that he was to be allowed a drawing account of $42.50 per week, against which was to be charged commissions earned on sales made by him. That during said period of time appellant had never earned, under his contract, the amount of his $42.50 per week withdrawals, and that but for the fact that appellee had forgiven him the sums overdrawn, appellant would owe appellee the sum of $5,-634.84. Trial was to a jury but at the close of the evidence the court, upon appellee's motion, instructed a verdict for appellee, and rendered judgment that appellant take nothing; hence this appeal.

The motion for an instructed verdict contains thirteen separate grounds upon which it is predicated. Neither the order granting it, nor the judgment, indicate upon what ground or grounds it was sustained. We shall not undertake to discuss all of the grounds stated but confine ourselves to those discussed in the briefs and particularly those urged by appellee as supporting the judgment. The first is that the evidence shows conclusively as a matter of law that appellant never had any such contract as that alleged by him. This contention is not supported by the record. In addition to documentary evidence, and the testimony of appellant and appellee, which comprises approximately 375 pages of the 560-page statement of facts, eight other witnesses testified. Six of these were other employees of Gaston and two were managers and/or salesmen engaged in other similar businesses in Austin. Their testimony was, for the most part, concerning their duties, rates of pay, contracts of employment, or opinions as to what would have been reasonable compensation for the character of services for which Fruth was employed, and which he rendered to Gaston. The suit here being upon a specific contract between Gaston and Fruth, what the customary practice in such cases was, or what contract of employment Gaston may have had with other employees would ordinarily not be competent evidence as to what Fruth's contract was. 17 Tex.Jur. p. 388, § 135, and cases cited. At most such testimony would be admissible only for purposes of impeachment of Fruth's testimony as to what his contract was. None of said witnesses heard the agreement made between Gaston and Fruth. While some contradictions, inconsistencies and discrepancies occur in the testimony both of Fruth and of Gaston as to what the agreement was between them; each testified positively what the agreement was—Fruth that he was to receive a salary of $42.50 per week and in addition thereto ¼% of the gross sales of his department for management, ¾% for buying, and between 3% and 5% of the net profits, to be later agreed upon; and Gaston that he was to be compensated on a commission only, with an allowance of $42.50 per week against which his commissions were to be charged. There was thus presented a direct conflict in their testimony, either or neither of whom the jury could have believed. There was evidence, pro and con, in support of and in contradiction of, the testimony of each of them. Each party in his respective briefs sets out extensive excerpts of the evidence which, if taken alone, would warrant a jury finding in behalf of either. It would unduly prolong this opinion and serve no useful purpose to review the evidence here. Suffice it to say that, as against an instructed verdict, if the uniform rule be applied that only the evidence favorable to appellant be considered and taken as true, and that in favor of appellee be disregarded, it was sufficient to sustain a verdict in appellant's favor. That being true it was error for the

trial court to instruct a verdict based on that ground. Conflicts, inconsistencies, contradictions, and improbabilities, which incidentally are found in the testimony of both appellant and appellee, but presented issues of credibility for jury determination. There is not here presented a case of a mere scintilla of evidence, or such as would arouse mere surmise or suspicion of the existence of the fact sought to be proved, long since held not to be "any evidence," a question of law for determination by the court. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Waco Drug Co. v. Hensley, Tex.Com.App., 34 S.W.2d 832, and cases therein cited; Holt v. Collins, Tex.Civ. App., 131 S.W.2d 813. In the instant case the testimony of each party was positive as to what the contract of employment was; and most of the other testimony in its overall character merely bore on the question of which one was correct.

■ The fact that neither Gaston's Inc., a corporation, nor its liquidating officers, were made parties defendant, is not fatal to appellant's suit; nor does it warrant an instructed verdict on that ground. The record shows that the same business was originally incorporated in January, 1934, as Gaston-Merritt Co. In April, 1936, Gaston purchased Merritt's stock in the corporation and its name was changed to Gaston's, Incorporated. That corporation was dissolved in May, 1938, and Gaston continued to conduct the business individually. It was reincorporated in March, 1940, and that corporation again dissolved prior to the trial of this case. The testimony shows that at all times subsequent to September 1, 1937, Gaston had complete control and management of the business, operating it either as an individual, or as president of the corporation. Of the 750 shares of stock in the corporation, one share was issued without charge to his bookkeeper, and the remainder owned by Gaston and his wife, completely under his control; and as president he operated the business as he saw fit. Obviously the corporation was organized or dissolved merely to meet the exigencies of the moment, and was but the alter ego of Gaston, individually. Not only was this true but Gaston testified that on both occasions when the corporation was dissolved he assumed its assets and liabilities. Under such circumstances, even if the contract with Fruth was originally a liability of the corporation as then organized, Gaston, successor to all its assets and liabilities, was the only necessary party defendant. Having personally succeeded to all its assets and having assumed all its liabilities, he became personally liable for its debts.

■ Nor does the fact, conceding that the contract testified to by Fruth was made, that the percentage of net profits to be received by him was not definitely agreed upon but left to future determination, defeat his right of recovery. Certainly it could not defeat his right to recover that portion of the compensation definitely agreed upon—that is, the $42.50 per week plus 1% of the gross receipts of his department. There is not here involved specific performance, or damages that might accrue subsequent to a breach of contract. Whatever contract was made had already been performed and the suit was for compensation earned under it. If, in addition to the salary and 1% on gross sales, Gaston agreed to pay a percentage of net profits not to exceed five per cent and in no event not less than three, the law would imply a reasonable percentage within these limits; and such a promise, after Fruth had performed the services for which it was made, could not be construed as so indefinite and uncertain as to bar his recovery of any part thereof. 10 Tex.Jur., p. 183, § 105. Such a promise would imply an agreement to pay at least the minimum amount designated, dependent, of course, upon a jury finding that such an agreement was made.

■ Nor is the contention of appellee that said contract is within the statute of frauds, Art. 3995, Sec. 5, R.C.S., tenable. It was for an indefinite period and could have been terminated by either party at any time. It could therefore have been performed within one year from the making thereof, and the fact that it was continued for a longer period does not bring it within the statute so as to require it to be in writing. 20 Tex.Jur., p. 254, § 41.

■ On the issue of limitation it is clear that in no event would monies earned by Fruth under such contract within two years prior to filing of such suit, be barred. The employment terminated on December 24, 1942, and suit was filed in less than one year thereafter. Consequently it would be error to instruct a verdict on that ground, even if a plea of limitation were available to the appellee as to sums more than

two years past due, a matter we do not determine.

 Nor does the fact that Fruth continued in such employment for more than five years without bringing suit or demanding settlement, in view of his explanation of his failure to do so, establish laches and stale demand as a matter of law. Such issue is ordinarily one of fact. 27 Tex.Jur., p. 33, § 16. Fruth testified as to his intimate relationship with Gaston; that Gaston led him to believe he would be sold or given an interest in the business because of his long experience in the dry goods business, the good will he had built up, the value of his services to Gaston, and Gaston's inexperience in such business; that he reposed complete confidence in Gaston's repeated promises, when Fruth undertook to discuss the matter of commissions with him, that he would see Fruth later, or adjust the matter later, at no time denying that he owed Fruth such commissions. Without detailing such testimony here, we think it was sufficient to present an issue of fact to the jury as to whether Gaston had, under all the facts and circumstances, lulled Fruth into a sense of security and led him to believe that he would be paid; and so estopped himself by his own conduct and promises to now assert such a plea. San Antonio Real-Estate, B. & L. Ass'n v. Stewart, 94 Tex. 441, 61 S.W. 386, 86 Am.St.Rep. 861; Nuckols v. Stanger, Tex.Civ.App., 153 S.W. 931; 17 Tex.Jur., p. 140, § 12; 19 Am.Jur., p. 671, § 60.

Nor can it be said as a matter of law that by accepting payment of $42.50 per week over a period of 5⅓ years Fruth had acquiesced in Gaston's version of the contract and had accepted payment in full. Gaston did not testify that a salary of $42.50 per week was the agreement. On the contrary he testified that Fruth was not to be paid a salary, but only commissions to be charged against a $42.50 per week drawing account. That, according to Gaston, was the only contract he had with Fruth. When given a statement by the bookkeeper showing such version of their contract by Gaston, Fruth promptly repudiated it, stating that such basis of payment did not apply to him; that he had a different arrangement with Gaston and delivery of such statements to him were thereafter discontinued. According to his testimony he at no time accepted the $42.50 per week as payment in full for his services, nor was it made to him as such, nor did Gaston so consider it. Consequently it could not be deemed a settlement under their contract.

We have not undertaken to discuss all the questions raised, nor the many authorities cited in support thereof. The controlling issue presented is whether the evidence as a whole shows, as a matter of law, that no such contract was made as testified to by Fruth, so entitling Gaston to an instructed verdict. The evidence relied on by appellee, as sustaining the judgment, however persuasive it may be, is, in the main, directed at the credibility of appellant's testimony and the improbability that Gaston made any such contract with him. Those matters, however, are clearly fact issues for jury determination and the court erred in not submitting them to the jury.

The judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.