**Herb GARLITZ, Appellant,**

v.

**Joe CARRASCO, Appellee.**

**No. 5405.**

Court of Civil Appeals of Texas.

El Paso.

Aug. 3, 1960.

Rehearing Denied Oct. 5, 1960.

Hill D. Hudson, Pecos, for appellant.

H. O. Metcalfe, Wm. H. Earney, Marfa, John Tomlin, Pecos, for appellee.

ABBOTT, Justice.

This was a suit by appellee (plaintiff below), alleging breach of contract by appellant (defendant below); and, from an award of damages by the jury, to appellee, appellant has perfected his appeal and is properly before this court.

In November, 1956, appellee and appellant entered into the following written contract:

"To Whom It May Concern:

"This Contract is entered into between Joe Carrasco hereinafter known as the farm operator, and Herb Garlitz hereinafter known as the farm manager.

"The farm manager will furnish fuel, lubricants, and oils for farm tractors, one pickup truck while on farm business, and pump motors. For the tractors and pickup truck this fuel will be butane. The farm manager will furnish funds for *apying* for all farm operating expenses except as noted below:

"The farm operator will at his own expense contract, transport, and pay cotton pickers, and he will haul the cotton to the gin at his own expense.

"The farm operator will furnish tractors, equipment, and trailers necessary for carrying on the farming operation and will pay for any necessary repairs on same. This also to include the pickup truck owned and used by the operator.

"It is specifically agreed that the farm manager will furnish housing, bedding, and cooking facilities for the cotton pickers. Irrigation tarps and hoses will be furnished by the farm manager.

"Tractor drivers will be furnished by the farm operator. The farm manager will pay the wages of a tractor driver only at times when it is necessary to have two tractors working at the same time.

"The farm operator will carry out the feed crop and soil improving crop programs planned by the farm manager. Any livestock kept on the farm will be looked after by the farm operator.

"The irrigation water requirements of the cotton crop will be given first consideration.

"The farm operator will be paid by the farm manager as follows:

'1. $250.00 per month for each month of 1957 and prior to 1957 on a pro-rata basis if farm work begins before the first of the year.

"2. $60.00 per bale for each bale of cotton produced. (Calculated on basis of 500 pound bales.)

"All of the above provisions apply to the two pump farms east of Balmorhea, Texas known as the Baker-Whitson Pump Farms.

"(Seal)        Joe Carrasco
       "Farm Operator
"Omo C Piskin, Notary Public
          Herb Garlitz
       "Farm Manager
"Sworn and subscribed to before me this 24th day of November, 1956."

The evidence shows that in December, 1956, appellee entered on to the farm mentioned and began to prepare it for planting. Appellee continued to work the farm until he was removed by appellant June 15, 1957. Notice of the pending removal had been given on June 11, 1957, by letter, stating:

"Mr. Joe Carrasco
Saragosa, Texas
"Dear Mr. Carrasco:

"According to paragraph 8 of the contract entered into between us on November 24, 1956 you were to carry out the feed and livestock program as planned by me. You failed to make any effort to do this even before the rains came and you had time provided you had been giving our farming operation the proper attention.

"You made no effort to obtain and have ready the equipment as necessary to properly farm and it has been necessary for me to assume this responsibility. You will note that contract referred to above provided for your assuming this responsibility.

"You have been *delinquient* in providing cotton choppers at the proper time even though you assured me you

had them lined up ready to go as soon as it dried up after the rains.

"Your tardiness in accomplishing jobs on time will cause us to lose part of our crop provided another rain would come at the present time.

"Since you have relegated our operation to second place for your attentions it has been necessary for me to assume much of the direct supervision which contract provided that you do.

"Out of fear that the present situation would continue on through the crop year and that we would be late and behind in getting our crop out and thereby lose in grade, I hereby declare our contract null and void by reason of your failure to comply.

"I am assuming full responsibility for the farming operation on the Baker-Whitson Pump Farms as of June 15, 1957.

"I will reimburse you a fair amount for the plowing but consider that you have been adequately paid for all other work in view of the type of supervision you have rendered and the present condition that the crop is in.

"Very truly yours,
"/s/ Herb Garlitz"

Appellant assumed the task of completing the crop and after the completion of said crop, appellee brought suit for his share under the above contract, alleging that he had been, without just cause and in violation of said contract, ejected from the farm, and had not been allowed to complete his contract; all of this through no fault of his own.

By way of answer, appellant admitted the contract, but alleged that he had taken over the farm because appellee had failed in his contract in furnishing equipment, and the devotion of time and effort necessary for proper cultivation and handling of said crops. Appellant further alleged that it was necessary for him to take over the

operation because appellee had failed to properly farm such land, and that this failure was causing irreparable harm to appellant.

The case was tried before a jury, and the special issues were, substantially:

1. How much cotton would appellee reasonably have produced had he been allowed to complete the contract;

2. Necessary expense of appellee in contracting and paying for cotton pickers, transporting cotton, and furnishing necessary trailers;

3. Expense of appellee in furnishing necessary equipment, repairs, tractor driver, etc., from June 15, 1957 until crop produced;

4. Amount earned by appellee from June 15, 1957 to January 10, 1958 because of being freed from said contract;

5. Amount that could have been earned by appellee from June 15, 1957 to January 10, 1958 in the exercise of reasonable diligence.

The appellant objected to the court's charge, and submitted his own issues, substantially as follows:

1. Did appellee breach his contract prior to June 15, 1957;

2. Did appellee fail to farm the land in a good and farmerlike manner prior to June 15, 1957;

and five other issues that it is not necessary to discuss here. All requested issues were overruled by the trial court. Appellant's points of error are directed to the above.

■ We agree with appellant in that, where the contract is one of personal service, there is an implied covenant for doing the work required in a good and workmanlike manner. 13 Tex.Jur. (Crops) 45, sec. 51; 13 Tex.Jur.2d 547, sec. 300.

In Freeport Sulphur Co. v. American Sulphur Royalty Co. of Texas, 117 Tex. 439, 6 S.W.2d 1039, at page 1041, 60 A.L.R. 890, we find the Texas law on implied covenants, and we believe this case to fall within the limits set out there. The appellee has briefed this matter as though the contract was a lease, but we can find no support in the instrument itself to support this contention. 13 Tex.Jur. (Crops) 131, sec. 44; Texas Produce Exchange v. Sorrell, Tex.Civ.App., 168 S.W. 74.

Under this type of contract, it has been recognized that if performance is wrongfully prevented by the other party, the injured party may recover either on the contract itself or in quantum meruit, at his election. 13 T.J.2d (Contracts) 552, sec. 303, and cited cases.

It will be noted above that the term, "wrongfully prevented", is used; and we believe this creates a fact issue which must be resolved by the jury. Fagan v. Vogt, 35 Tex.Civ.App. 528, 80 S.W. 664.

The proper measure of damages cannot be determined until it is known which party breached the contract. Curlee v. Rogan, Tex.Civ.App., 136 S.W. 1126; Jordan v. Dinwiddie et al., Tex.Civ.App., 205 S.W. 862.

There is no doubt that appellee was liable to be discharged for cause, subject to his right to recover such an amount of the crop, or its proceeds, as is proportioned to the time which he worked on it. 15 Am.Jur. (Crops) 247, sec. 55.

Believing that the proper issues were not submitted to the jury, we sustain appellant's assignments of error. The judgment of the trial court is reversed and this cause is remanded.