**Henry C. MOODY, dba Moody's Quality Meats and dba Moody's Provisions, Appellant,**

v.

**John T. MESSER, Appellee.**

No. 738.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 30, 1972.

Edwards & DeAnda, Bruce Bigelow, Corpus Christi, for appellant.

Sam A. Westergren, Jr., Corpus Christi, for appellee.

OPINION

BISSETT, Justice.

This suit was instituted by John T. Messer, plaintiff-appellee, against Henry C. Moody, defendant-appellant, to recover for accounting services alleged to have been furnished to defendant. Trial was to a jury. The parties will be designated

herein as plaintiff and defendant, as they appeared in the trial court.

Plaintiff alleged that from July 2, 1970 until August 14, 1970, at the instance and request of defendant, he performed accounting services for defendant which were reasonably worth $800.00, none of which had been paid. He sued for such amount of money, plus reasonable attorney's fees.

Defendant answered with a general denial and filed a cross-action. He alleged that plaintiff submitted billings in the total amount of $1,400.00 of which defendant had paid $575.00. He further alleged that plaintiff had performed very little of the work that he had contracted to do and the work that was performed was virtually worthless to him. He prayed that plaintiff take nothing by his action and that he (defendant) recover the $575.00 previously paid by him to plaintiff.

The jury, in response to the issues submitted, found that the parties agreed upon an hourly rate of $12.50 for the accounting work performed by plaintiff from March 17, 1970 through July 29, 1970; that a total of sixty-six hours was devoted to that work; that plaintiff worked one hour from August 6, 1970 through August 14, 1970; and that a fair and just hourly rate of such hour's work was $12.50. Judgment was entered for plaintiff in the aggregate sum of $528.50, $266.00 of which represented a stipulated recovery of attorney's fees. Defendant was denied recovery on his cross-action. We reverse and remand.

Defendant timely objected to the court's charge "for its failure to include a Special Issue inquiring into whether or not Plaintiff performed the work he allegedly performed in a good and workmanlike manner", and "for its failure to instruct the jury that the Plaintiff is required to perform his professional services in a good and workmanlike manner". Both objections were overruled by the trial court. These rulings are complained of by

defendant in his third and fourth points of error.

In addition to the foregoing objections to the court's charge, defendant requested the following:

"Special Issue No. 1

Do you find from a preponderance of the evidence that Plaintiff failed to perform the services allegedly rendered for Defendant in a professional, good and workmanlike manner?

ANSWER 'We do' or 'We do not'

ANSWER: ———."

The trial court refused to submit defendant's requested issue. That refusal is the subject matter of defendant's first point of error.

In the Spring of 1970, defendant contacted plaintiff with regard to plaintiff's setting up and maintaining an accounting-bookkeeping system for his business. On July 7, 1970, plaintiff billed defendant for "46 hours @ $12.50" amounting to $575.00, less $300.00 theretofore advanced by defendant for "professional services rendered from 3–15–70 to 6–30–70". The balance of $275.00 said by plaintiff to be due was paid by defendant under protest. On August 14, 1970, plaintiff billed defendant for additional accounting services in the amount of $325.00 and for $500.00 for professional services alleged to have been furnished in connection with defendant's application for an SBA disaster loan. The $500.00 claim was later reduced to $475.00. Defendant refused to pay this bill. He discharged plaintiff.

It is undisputed that plaintiff was hired by defendant to set up books for a new business that had been recently acquired by defendant. The evidence shows that he obtained certain titled manila folders for use in filing the business papers. He set up a cash journal, a disbursements journal and a general ledger. He arranged for Mrs. Hall, an experienced bookkeeper, to

go to work for defendant at defendant's place of business who would keep the books under his (plaintiff's) supervision and direction. Plaintiff worked on the books at defendant's plant and in his own home. He prepared one balance sheet and one financial statement, the former as of June 30, 1970, and the latter for two months ending June 30, 1970. He closed the books only one time, as of June 30, 1970. He had not set up an accounts payable ledger as of the close of July business.

Mrs. Hall stated that it was the responsibility of plaintiff to set up defendant's books, to close them out and to prepare financial statements showing the condition of the business. It was her responsibility to post the business transactions in the books that were opened up by plaintiff. She testified that during the period of time in question she had difficulties in performing the duties and tasks that were assigned to her by plaintiff as bookkeeper for defendant. She said "All I had was the general ledger"; "it wasn't very complete"; "there were never any accounts payables set up"; and "it was a matter of not being able to proceed with the books". She further testified that plaintiff closed out the books and prepared a financial statement on only one occasion, and that normally this would be done at the end of each month. She did not feel that she was qualified to close the books or to prepare financial statements.

Defendant, in substance, testified that plaintiff never did install a dependable bookkeeping system. He said that he could never tell how his business was going, that on occasion he had to call his bank to determine the balance of his business's account, and that the books that were set up by plaintiff were of no value to him.

■ In the absence of an express agreement in the contract to the contrary, accompanying every contract is a common-law duty to perform the work agreed to be done with care, skill, reasonable expedience and in a good and workmanlike manner;

and, if the work is not performed in such manner and the work proves to be worthless, then the person performing the same will not be permitted a recovery therefor. Davidson v. Edgar, 5 Tex. 492 (1851); Waul v. Hardie, 17 Tex. 553 (1856); Shasta Oil Co. v. Halliburton Oil Well Cementing Co., 10 S.W.2d 597 (Tex.Civ.App.—Amarillo 1928, writ ref'd). That rule applies to the case before us, where professional services were contracted for and allegedly furnished. Garlitz v. Carrasco, 339 S.W.2d 92 (Tex.Civ.App.—El Paso 1960, writ ref'd, n. r. e.); Westbrook v. Watts, 268 S.W.2d 694 (Tex.Civ.App.—Waco, 1954, writ ref'd n r. e.); Manzer v. Barnes, 237 S.W.2d 686 (Tex.Civ.App.—Amarillo, 1950, n. w. h.); 17A C.J.S. Contracts § 494(1), pp. 701–709; 13 Tex.Jur. 2d, Contracts, § 300, pp. 547–550.

■ Accounting is a profession. Plaintiff is a public accountant and is professionally qualified to render the services required by the contract. Defendant admits that plaintiff rendered services for him, but he contends that such services were of no value to him and that the professional services that were actually furnished were not performed in a good and workmanlike manner. He testified that the books that were set up by plaintiff were incomplete and meant nothing, that his business was at a standstill because of the condition of the books, that during the four-month interval involved he never knew the financial status of his business, and that because of the situation existing he had to hire another accountant to come in and set up a completely new set of books for the business. Only the general ledger that was opened by plaintiff was used by the successor accountant in installing the new bookkeeping system.

As a matter of law, the contract made and entered into by and between plaintiff and defendant impliedly included the premise that the professional services to be rendered by plaintiff were required to be performed in a good and workmanlike manner. The quality of the services that were

**322**

performed is the essence of the dispute between the parties. The evidence raised a fact issue as to whether the services that were actually furnished were performed in such a manner as to comport with the object designed. That question should have been resolved by the jury. A special issue inquiring into the standard of the services rendered, accompanied by appropriate instructions, should have been submitted. Such an issue constituted an element necessary to defendant's defense to the action brought against him. The failure to submit such an issue resulted in a verdict which is not adequate to support the judgment in favor of plaintiff. Defendant's first, third and fourth points are sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial.