**Billy Kirk PRUITT, Plaintiff–Appellant,**

v.

**LEVI STRAUSS & CO.,
Defendant–Appellee.**

No. 90–1449.

United States Court of Appeals,
Fifth Circuit.

June 3, 1991.

Rehearing and Rehearing En Banc Denied
June 25, 1991.

---

James L. Hicks, Jr., Hicks, James & Preston, Dallas, Tex., for plaintiff-appellant.

Joshua Floum, argued, Robert J. Vizas, William J. Carroll, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant-appellee.

Before JOHNSON, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Billy Kirk Pruitt filed this action challenging the termination of his employment with a division of Defendant–Appellee, Levi Strauss & Co. (Levi Strauss). Specifically, Pruitt alleged that Levi Strauss fraudulently induced him to leave his former employment, breached oral and written contracts of employment and breached a covenant of good faith and fair dealing. The district court granted Levi Strauss summary judgment on all claims, and we affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

Early in 1980, Levi Strauss & Co., a California corporation which is one of the world's largest apparel manufacturers, opened a separate division to market women's blouses (the Tops division). Levi Strauss recruited Pruitt to work as an account executive in the Tops division. Pruitt maintains that Levi Strauss lured him from a comfortable position at another company with promises that it would provide Pruitt employment for as long as he performed his job satisfactorily. Pruitt commenced employment in the Dallas office of Tops in February 1980. After five months, Levi Strauss promoted Pruitt to regional sales manager.

Levi Strauss entered the womenswear market with expectations that never materialized. Despite financial support from Levi Strauss, the Tops division lost fifteen million dollars in the first three years of its operation. Levi Strauss's senior management reluctantly decided to stop the financial hemorrhaging by dissolving the Tops division. In November 1983, Levi Strauss announced its decision to halt operations in the Tops division. Two months later, Levi Strauss eliminated all employment positions in the division, including Pruitt's.

On November 14, 1986, Pruitt filed a diversity action in federal district court challenging his termination of employment.

Pruitt alleged four causes of action: (1) breach of the covenant of good faith and fair dealing; (2) fraudulent inducement; (3) breach of a written contract of employment; and (4) breach of an oral contract of employment. The district court granted Levi Strauss summary judgment on all of Pruitt's claims and dismissed the suit. First, the court determined that Texas law, which does not recognize a covenant of good faith and fair dealing in employment relations, governed Pruitt's complaints. Second, the court determined that Pruitt had failed to adduce any evidence that Levi Strauss had deliberately or recklessly made false statements to him. Third, the court determined as a matter of law that no written contract of employment existed for Levi Strauss to breach. Finally, the court determined that the statute of frauds foreclosed Pruitt's reliance on the alleged oral contract.

## II.

### DISCUSSION

#### A. Standard of Review

This court reviews the grant of summary judgment motion de novo, using the same criteria used by the district court in the first instance. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). We "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986) (per curiam) (citing *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir.1984)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

### B. Breach of the Covenant of Good Faith and Fair Dealing

Pruitt argues that the district court erroneously failed to apply California employment law to resolve the dispute between the parties. California law imposes on employers a covenant of good faith and fair dealing. *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 456, 168 Cal.Rptr. 722 (1980). On the other hand, Texas law, the only alternative asserted by Levi Strauss, does not recognize a covenant of good faith and fair dealing in the employment relationship. *English v. Fischer*, 660 S.W.2d 521 (Tex.1983).

■ In a diversity action in federal court, the district court is required to follow the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Texas has adopted the "most significant relationship" approach to choice of law, as detailed in the Restatement (Second) of Conflict of Laws. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex.1990). Under this approach, "in all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984).[1]

■ In cases involving contracts for the rendition of services, the Texas Supreme Court has particularly relied on section 196 of the Restatement. *DeSantis*, 793 S.W.2d at 679. Section 196 requires the application of the law of the state in which a "major portion" of the contractual services were performed, unless a different state has a more significant relationship to the transaction and the parties. Restatement (Second) of Conflict of Laws § 196 (1980).[2] As a general rule, the place in which a services contract is performed "is *conclusive* in determining what state's law is to apply." *DeSantis*, 793 S.W.2d at 679. In the instant case, Pruitt performed the major portion of his employment obligations in Texas. Thus, Texas law applies to any complaints arising from this employment except in the rare situation in which a different state has a more significant relationship to the transaction and the parties.

■ This court cannot discern that any state has a more significant relationship to the transaction and the parties than the State of Texas. The application of the most significant relationship approach to the resolution of choice of law questions does "not turn on the number of contacts, but more importantly on the qualitative nature of those contacts as affected by the policy factors enumerated in Section [6 of the Restatement]." *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex.1979). In effect, the most significant relationship approach examines the relative interests of the states sharing a relationship with the transaction and the parties. Texas has a compelling interest in the application of its employment law to its own residents and the employment activities that occur within its borders. *Garcia v. Total Oilfield Servs., Inc.*, 703 S.W.2d 411, 415 (Tex.App. —Amarillo), *writ ref'd n.r.e. per curiam*, 711 S.W.2d 237 (Tex.1986). Other states, including California, might have similar interests in the application of their respective

1. The parties in this case did not agree to a choice of law clause in any employment contract.

2. Section 196, in its entirety, states:
   *Contracts for the Rendition of Services.*
   The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
   Restatement (Second) of Contracts § 196 (1980).

employment laws, but these interests are much more attenuated when the aggrieved party is an out-of-state resident who suffered an out-of-state injury. *Abston v. Levi Strauss & Co.*, 684 F.Supp. 152, 155 (E.D.Tex.1987). Thus, under the guidelines of section 196 of the Restatement, the district court properly applied Texas law. Accordingly, this court is unable to conclude that the district court improperly granted summary judgment against Pruitt's claim for breach of the covenant of good faith and fair dealing in the employment relationship, as that claim is not recognized in Texas.

## C. Fraudulent Inducement

■ Pruitt argues that the district court erroneously granted Levi Strauss summary judgment on Pruitt's fraudulent inducement claim. To withstand summary judgment, the plaintiff in a fraud action must adduce some evidence that the purported misrepresentation was deliberately or recklessly false at the time it was made. *Levine v. Loma Corp.*; 661 S.W.2d 779, 783 (Tex.App.—Fort Worth 1983, no writ); *Torres v. Texas Real Estate Comm'n*, 605 S.W.2d 394, 396 (Tex.Civ.App.—Beaumont 1980, no writ). "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). Pruitt has failed to introduce any summary judgment evidence that Levi Strauss possessed the requisite fraudulent intent at the time of the alleged misrepresentation.

■ Pruitt complains that the requisite intent may be supplied by an inference of fraudulent intent. "While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made." *Id.* at 434. Even if such an inference is applicable, however, it

is insufficient to warrant reversal of the district court's grant of summary judgment. The only "subsequent act" of Levi Strauss that tends to support an inference of fraudulent intent is the corporation's alleged denial of the deceptive employment promises it made to Pruitt, despite the testimony of two witnesses that such promises were made.[3] The employer's denial of deceptive employment promises in the face of strong evidence that such promises were made is some evidence of fraudulent intent, but certainly is not decisive. *See Stanfield v. O'Boyle*, 462 S.W.2d 270 (Tex.1971); *Bond v. Duren*, 520 S.W.2d 460 (Tex.Civ. App.—Waco 1975, writ ref'd n.r.e.). In this case, the value of Levi Strauss's alleged denial of the deceptive promises is minimal, for two reasons: (1) Pruitt admitted at trial that he did not believe that Levi Strauss deliberately misled him; and (2) Levi Strauss introduced controverting evidence that it did not deliberately or recklessly intend to deceive Pruitt. In light of these facts and of Pruitt's failure to introduce any specific evidence of Levi Strauss's fraudulent intent, the district court could reasonably conclude that Pruitt failed to raise a fact issue sufficient to avoid summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (The opponent of a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."). This court is unable to conclude that the district court erroneously granted summary judgment against Pruitt's fraudulent inducement claim.

## D. Breach of Written Contract

■ Pruitt argues that the district court erroneously concluded that no written contract existed on which Pruitt could base a breach of contract claim.[4] He contends

---

**3.** It is unclear whether Levi Strauss ever denied that it promised Pruitt employment for as long as he performed satisfactorily.

**4.** Pruitt argues in addition that a commissions agreement, which states that it is effective until thirty days notice is given, provided a tenable

written employment contract with Levi Strauss. This argument is meritless. As the district court recognized, "[a]n employment contract providing for an indefinite term of service may be terminated at will by either the employer or the employee.... Clearly, a contract that goes on

that Levi Strauss's home office personnel manual, which prescribes procedures for employment termination, constituted a legally binding written employment contract. Under Texas law, personnel manuals and employee handbooks do not create contractual rights unless the parties expressly agree that the procedures contained in these materials are binding. *See, e.g., Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757, 759 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ("Employee handbooks, unaccompanied by an express agreement dealing with procedure for discharge of employees, do not create contractual rights regarding those procedures."); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ) (absent express reciprocal agreement dealing with procedures for discharge, employee handbooks "constitute no more than general guidelines").

■ This court in *Aiello v. United Air Lines, Inc.,* 818 F.2d 1196 (5th Cir.1987), recognized an exception to the general rule in Texas that personnel manuals and employee handbooks do not create contractual rights. We noted that only under circumstances of "great significance," could such materials constitute express written contracts. *Id.* at 1201; *see United Transp. Union v. Brown,* 694 S.W.2d 630 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.). In *Aiello,* three factors engendered circumstances of "great significance": (1) the employee manual contained detailed procedures for discipline and discharge; (2) the employer followed these procedures and notified the employee that she was entitled to them; and (3) the supervisor who discharged the employee treated the provisions of the employee manual as a contractual obligation. *Aiello,* 818 F.2d at 1201.

In the instant case, Pruitt failed to demonstrate circumstances of "great significance" sufficient to establish an *Aiello* exception. Pruitt adequately demonstrated that the home office personnel manual contained detailed discharge procedures, but

failed to show that Levi Strauss treated these procedures as anything more than advisory guidelines, or that the person who discharged Pruitt treated the employee manual as a contractual obligation. Nothing in the record suggests that the home office personnel manual constituted a written contract. Accordingly, this court is unable to conclude that the district court erroneously granted summary judgment on Pruitt's breach of written contract claim.

*E. Breach of Oral Contract*

■ Pruitt argues that the district court erroneously concluded that the statute of frauds rendered unenforceable any oral employment contract between Pruitt and Levi Strauss. Whether a contract comes within the statute of frauds is a question of law. *See Bratcher v. Dozier,* 162 Tex. 319, 346 S.W.2d 795, 796 (1961).

■ The statute of frauds in Texas provides that an oral agreement that cannot be performed within one year from the date of its making is unenforceable. Tex.Bus. & Com.Code Ann. § 26.01(b)(6) (Vernon 1987). In determining "whether an agreement falls within the Statute of Frauds, one examines the agreement's duration." *Morgan v. Jack Brown Cleaners, Inc.,* 764 S.W.2d 825, 827 (Tex.App.—Austin 1989, writ denied). The courts of Texas have recognized that the statute of frauds does not render unenforceable an indefinite term oral contract if termination could occur in the first year. The general rule in Texas when no period of performance is stated in an oral employment contract, is that the statute of frauds does not apply because the contract is performable within a year. *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773, 775 (Tex.1974); *Bratcher,* 346 S.W.2d at 796; *Morgan,* 764 S.W.2d at 827; *Robertson v. Pohorelsky,* 583 S.W.2d 956, 958 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). If an oral employment agreement can cease upon some contingency, other than by some fortuitous event or the death of one of the parties,[5] the agreement may be

until 30 days notice does not provide for a definite term." Record at 885.

5. *See Hurt v. Standard Oil Co.,* 444 S.W.2d 342, 344 (Tex.Civ.App.—El Paso 1969, no writ) (quoting *Chevalier v. Lane's, Inc.,* 147 Tex. 106, 213

performed within one year, and the statute of frauds does not apply. *See McRae v. Lindale Indep. School Dist.*, 450 S.W.2d 118, 124 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.); *Fruth v. Gaston*, 187 S.W.2d 581, 584 (Tex.Civ.App.—Austin 1945, writ ref'd w.o.m.) ("[The employment contract] was for an indefinite period and could have been terminated by either party at any time. It therefore could have been performed within one year from the making thereof, and the fact that it was continued for a longer period does not bring it within the statute so as to require it to be in writing."). The statute of frauds "bars only [oral] contracts which *must* last longer than one year." *Morgan*, 764 S.W.2d at 827 (citing *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex.1982)).

■■■ For example, an oral employment agreement that provides for employment until normal retirement age is unenforceable because the agreement cannot be performed within a year, unless, of course, the promisee is within one year of normal retirement age at the time the promise is made. *See Stiver v. Texas Instruments, Inc.*, 750 S.W.2d 843, 846 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Molder v. Southwestern Bell Tel. Co.*, 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Likewise, an agreement to provide lifetime or permanent employment must be in writing to be enforceable because it cannot be performed within a year. *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 407 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *see also Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469 (5th Cir.1991) (decided today by this panel) (holding that, under binding Texas law, an oral promise of lifetime employment is unenforceable). But according to the holdings of at least two intermediate appellate courts of Texas, the statute of frauds does not apply to oral agreements promising employment *for as long as an employee does faithful, honest, and satisfactory work* because the employment could cease on a contingency that could occur within a year. *See McRae*, 450 S.W.2d at 124; *Hardison v. A.H. Belo Corp.*, 247 S.W.2d 167, 168–69 (Tex.Civ. App.—Dallas 1952, no writ).[6]

In the instant case, Pruitt's deposition alleges that Levi Strauss orally promised him employment as long as he performed his job satisfactorily. Assuming arguendo that such an agreement existed, it was for an indefinite duration under Texas law: Pruitt's employment conceivably could have been terminated at any time that his performance became unsatisfactory, even within the first year. Consequently, the agreement was not one that must last longer than one year.

Levi Strauss, relying on three Texas court of appeals cases, *Stiver*, 750 S.W.2d at 846, *Benoit*, 728 S.W.2d at 406, and *Molder*, 665 S.W.2d at 177, nevertheless urges that promises of lifetime or permanent employment or of employment until retirement age must be in writing to be enforceable *even if* the agreement is contingent upon satisfactory performance of job duties. Those cases do not stand for that proposition. *Stiver* and *Molder* both involved alleged oral agreements to provide employment until the normal retirement age of 65 with no further contingency for termination. Because the employees in those two cases were younger than age 64 when the promises were made and because the alleged oral employment agreements did not provide some contingency for termination that could occur within one year, the contracts could not be performed within a year and were thus barred by the statute

S.W.2d 530, 532 (1948)) (If, by terms of oral employment agreement, its period is to extend beyond a year from date of its making, " 'the mere possibility of termination … within a year because of death or other fortuitous event does not render [the statute of frauds] inapplicable.' ").

6. *See also Johnson v. Ford Motor Co.*, 690 S.W.2d 90, 91, 93 (Tex.App.—Eastland 1985, writ ref'd n.r.e.) (plaintiff stated cause of action for breach of express employment contract by alleging that his at-will status was modified by oral agreements with supervisory personnel that he would not be terminated except for good cause *and* that his employment would continue so long as his work was satisfactory).

of frauds. *Stiver*, 750 S.W.2d at 846; *Molder*, 665 S.W.2d at 177; *see also Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 127 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (statute of frauds barred an oral contract providing an employment term until retirement age). *Benoit* held that "[t]he promise of lifetime employment, or the promise of permanent employment, or the promise of employment until the age of 65, is that type of employment· agreement that must be reduced to writing to be enforceable." *Benoit*, 728 S.W.2d at 407. *Benoit*, like *Stiver* and *Molder*, is distinguishable from the instant case because the alleged oral employment contract was not subject to termination, even within the initial twelve months, upon the occurrence of a contingency such as failure of the employee to perform his job duties satisfactorily.

### F.  Stare Decisis

The foregoing state jurisprudential distinction to the contrary notwithstanding, this court in *Falconer v. Soltex Polymer Corp.*, No. 89–2216 (5th Cir. Sept. 12, 1989) [886 F.2d 1312 (table)] (unpublished opinion), citing *Stiver, Benoit,* and *Molder*, held that an oral agreement of employment for as long as the employee "obeyed the company rules and did his job" was barred by the statute of frauds.[7]  *Falconer* also held that the employee failed to produce any evidence to support the existence of an oral agreement. The *Falconer* court then reiterated that even if the employee *had produced* evidence of an oral contract, the contract *"would have been* barred by the statute of frauds." Its conclusion that the agreement would have been barred by the statute of frauds is an alternative holding. This circuit follows the rule that alternative holdings are binding precedent and not *obi-*

ter dictum.  See *United States v. Adamson*, 665 F.2d 649, 656 n. 19 (Former 5th Cir.1982) (A decision that is not necessary to support the ultimate ruling, such as an alternative holding, on issues that were fully presented. and litigated is not dictum and is binding precedent), *cert. denied*, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983); *McClellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 925 n. 21 (5th Cir.1977) ("It has long been settled that *all* alternative rationales for a given result have precedential value. 'It does not make a reason given for a conclusion in a case *obiter dictum*, because it is only one of two reasons for the same conclusion.' " (quoting *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 340, 48 S.Ct. 194, 196, 72 L.Ed. 303 (1928))).

In this circuit one "panel may not overrule the decision, right or wrong, of a prior panel," *Brown v. United States*, 890 F.2d 1329, 1336 (5th Cir.1989), in the absence of en banc reconsideration or superseding decision of the Supreme Court, *In re Fox*, 902 F.2d 411 (5th Cir.1990); *Umphlet v. Connick*, 815 F.2d 1061 (5th Cir.1987); *Ketchum v. Gulf Oil Co.*, 798 F.2d 159 (5th Cir.1986).[8]  As the dissenting opinion notes, this court must, however, "follow subsequent state court decisions that are *clearly contrary* to a previous decision of this court." *Farnham v. Bristow Helicopters, Inc.*, 776 F.2d 535 (5th Cir.1985) (emphasis added). The dissenting opinion takes the position that *Winograd v. Willis*, 789 S.W.2d 307 (Tex.App.—Houston [14th Dist.] 1990, writ denied), which was decided after *Falconer*, conflicts with *Falconer* and thus requires us to abandon *Falconer*. In discussing Texas law on the subject of the enforceability of oral employment agreements, the *Winograd* court

---

7.  Unpublished opinions of this circuit are precedent.  Fifth Cir.Loc.R. 47.5.3.

8.  *See also Samaad v. City of Dallas*, 922 F.2d 216, 219 (5th Cir.1991); *United States v. Don B. Hart Equity Pure Trust*, 818 F.2d 1246, 1250 (5th Cir.1987); *Young v. Biggers*, 816 F.2d 216, 217 (5th Cir.1987); *Alexander v. Chevron*, 806 F.2d 526 (5th Cir.1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987); *Autry v. Estelle*, 706 F.2d 1394, 1401 (5th Cir.1983); *United States v. Chanya*, 700 F.2d 192, 194 (5th Cir.1983), *cert. denied*, 466 U.S. 943, 104 S.Ct. 1925, 80 L.Ed.2d 471 (1984); *Broussard v. Southern Pac. Transp. Co.*, 665 F.2d 1387, 1389 (Former 5th Cir.1982) (en banc); *Howard v. Gonzales*, 658 F.2d 352, 359 (5th Cir. Unit A Oct. 1981); *Cavett v. Ellis*, 578 F.2d 567, 569 (5th Cir.1978); *Manning v. M/V "Sea Road"*, 417 F.2d 603, 611 n. 10 (5th Cir.1969).

quoted the following language from *Morgan v. Jack Brown Cleaners:* "The Statute of Frauds bars only those contracts which must last longer than one year." *Morgan,* 764 S.W.2d at 827. The dissent relies on that language from *Morgan* as resolving definitively the issue in *Pruitt* as to whether a contract for as long as Pruitt performed his job satisfactorily is or is not barred by the statute of frauds. We do not read the language from *Morgan,* however, as "clearly contrary" to *Falconer;* neither do we read it to compel the conclusion that the statute of frauds does not apply to Pruitt's alleged oral agreement.[9] Moreover, the relevant language from *Morgan,* quoted in *Winograd v. Willis,* as the dissent impliedly recognizes, was not uttered in a factual context present in this case or in *Falconer.* The *Winograd* facts are too different from the facts in this case and from the almost identical *Falconer* facts to give *Winograd* the precedential value needed to overrule *Falconer* on the rule of *Farnham v. Bristow Helicopters, Inc.* We do not read *Farnham* as requiring or even allowing us to disregard our own prior decision when a subsequent state appellate court decision merely "conflicts" with it. *Farnham* applies only when the subsequent state appellate court decision is "clearly contrary" to the prior decision of this court in question. Because of the substantial differences between the *Winograd* contract and the contracts in *Falconer* and in this case, *Winograd* falls short of meeting the *Farnham* test for this panel to disregard *Falconer.* Because we cannot say that *Winograd* is "clearly contrary" to *Falconer,* we must follow *Falconer's* interpretation of Texas law.

**9.** The *Falconer* court could have been reasoning that the mere addition to an oral employment contract of a contingency which provides that a worker may be dismissed if he fails to perform satisfactorily should be ignored for purposes of the Statute of Frauds analysis as an implied condition of every employment contract, just as the Texas courts ignore the fortuitous possibility of death. *Cf. Mathis v. Bill de la Garza & Assocs., P.C.,* 778 S.W.2d 105, 108 (Tex.App.— Texarkana 1989, no writ) (absent an express agreement to the contrary, every contract for personal services contains an implied covenant to perform work required in a good and work-

## III.

## CONCLUSION

We conclude that the district court properly granted Levi Strauss summary judgment on all of Pruitt's claims, including, on the basis of our decision in *Falconer,* the claim for breach of oral contract. For the foregoing reasons, the judgment of the district court is

AFFIRMED.

JOHNSON, Circuit Judge, concurring in part and dissenting in part:

The doctrine of stare decisis serves laudable goals: it preserves the consistency of court opinion and ensures that the law does not change from moment to moment. The doctrine does not stand, however, as an insurmountable bar to the critical reexamination of flawed precedent. Stare decisis prevents change for the sake of change; it does not prevent any change at all. Unable to agree that the doctrine of stare decisis requires that this Court acquiesce in its prior decision in *Falconer v. Soltex Polymer Corp.,* 886 F.2d 1312 (5th Cir. 1989) (per curiam), I respectfully dissent from the majority's disposition of the plaintiff's breach of oral contract claim.

The general rule in this Circuit is that one panel cannot overturn the decisions of a prior panel. *See Wilson v. Taylor,* 658 F.2d 1021, 1034 (5th Cir.1981); *Hodge v. Seiler,* 558 F.2d 284, 287 (5th Cir.1977); *Puckett v. Commissioner,* 522 F.2d 1385, 1385 (5th Cir.1975). This formulation of the stare decisis doctrine applies even in cases in which state law supplies the sub-

manlike manner and with reasonable skill); *Moody v. Messer,* 489 S.W.2d 319, 321 (Tex.Civ. App.—Corpus Christi 1972, no writ) (same); *Garlitz v. Carrasco,* 339 S.W.2d 92, 95 (Tex.Civ. App.—El Paso 1960, writ ref'd n.r.e.) (same). In making this observation, we are not unmindful of our position in *Mercer v. C.A. Roberts Co.,* 570 F.2d 1232 (5th Cir.1978) (recognizing that when the time for performance of an oral employment agreement is uncertain and performance can conceivably occur within one year, the Texas statute of frauds is inapplicable, even if performance within the year is highly improbable).

stantive rule of decision. Thus, prior interpretations of state law are equally as binding as prior interpretations of federal law. *Broussard v. Southern Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir.1982) (en banc). In diversity cases, however, an exception to the general rule is sometimes applicable: if a prior decision of this Court conflicts with a subsequent state court decision, then this Court must follow the subsequent state court decision. *Farnham v. Bristow Helicopters, Inc.*, 776 F.2d 535, 537 (5th Cir. 1985). In the instant case, a subsequent state court decision is determinative; the decision in *Falconer v. Soltex Polymer Corporation* is not.[1]

The facts in *Falconer* were simple. Soltex Polymer Corporation discharged one of its employees, Emmett Falconer, allegedly because Falconer refused to submit to a drug screening test. Falconer filed an action in Texas state court claiming that Soltex breached an oral employment contract which provided that Falconer would have employment for so long as he "obeyed the company rules and did his job." After removal to federal court, the district court granted summary judgment in Soltex's favor. In an unpublished opinion,[2] a panel of this Court ruled that the Texas statute of frauds precluded the enforcement of an oral employment contract "for an indefinite term." *Falconer*, No. 89–2216, at 10.[3]

The panel in *Falconer* misinterpreted Texas law. At least two Texas appellate courts already had determined, in situations indistinguishable from *Falconer*, that the statute of frauds did not apply to oral agreements which promised employment for so long as an employee performs satisfactorily. *McRae v. Lindale Indep. School Dist.*, 450 S.W.2d 118, 124 (Tex.Civ.App.— Tyler 1970, writ ref'd n.r.e.); *Hardison v. A.H. Belo Corp.*, 247 S.W.2d 167, 168–69 (Tex.Civ.App.—Dallas 1952, no writ). And moreover, the Texas Supreme Court already had *expressly* rejected the reasoning in *Falconer* that indefinite term oral employment contracts were unenforceable. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex.1974) ("indefinite term employment contracts ... are considered performable within one year and therefore do not fall within the Statute of Frauds."); *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795, 796 (1961) ("The agreement in question is a simple contract of employment for an indefinite period of time. Generally, where no period of performance is stated in such contracts the statute is inapplicable.").

As might be expected, *Falconer* cited neither the *McRae* and *Hardison* line of cases nor the *Miller* and *Bratcher* line of cases. The opinion in *Falconer* instead relied upon three inapposite Texas court of appeals decisions: *Stiver v. Texas Instru-*

---

**1.** The majority concluded that the decision in *Falconer* is binding precedent because its interpretation of the Texas statute of frauds states an "alternative holding." Majority Opinion at 465. In *Falconer*, the Court reasoned that the employee had failed to produce any evidence to support the existence of an oral agreement. The *Falconer* Court then suggested that even if the employee had produced evidence of an oral contract, the contract "would have been barred by the statute of frauds." Unlike the majority, this writer is not entirely convinced that the *Falconer* interpretation of the statute of frauds is an alternative holding. A decision that states an alternative holding typically does not predicate one legal conclusion upon the absence of another; such a decision instead states its legal conclusions as "A *or* B." Both A and B in this situation are clearly "holdings" of the court, either of which might support the court's judgment. In the *Falconer* opinion, however, the panel stated its legal conclusions as "A, *but if not A, then* B." Under this structure, the only

legal conclusion that clearly is a "holding" is A; the B conclusion—in *Falconer* the statute of frauds conclusion—is merely a hypothetical.

**2.** *Falconer* is a prime example of the complications caused by this Court's continued adherence to the rule that unpublished opinions are binding precedent. Loc.R. 47.5.3. Because the opinion in *Falconer* was unpublished and unavailable, Pruitt in the instant case was completely unaware that this Court interpreted the Texas statute of frauds to preclude the enforcement of "indefinite term" oral contracts. As a consequence, Pruitt could not seek reasonable alternatives to an undesirable judgment in federal court.

**3.** There is little question that the oral agreement in *Falconer*, as in the instant case, carried an indefinite period of duration: Falconer's employment could be terminated at any time that his performance became unsatisfactory, whether or not a year had expired.

*ments, Inc.,* 750 S.W.2d 843 (Tex.App.— Houston [14th Dist.] 1988, no writ); *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *Molder v. Southwestern Bell Telephone Co.,* 665 S.W.2d 175 (Tex.App.— Houston [14th Dist.] 1983, writ ref'd n.r.e.). Two of these cases—*Stiver* and *Molder*—involved an oral employment contract that contained a *specific* term of duration, not an *indefinite* term of duration. The third case—*Benoit*—involved a promise of "lifetime employment," which is entirely distinguishable from a promise of employment "for so long as an employee performs satisfactorily." *See* Majority Opinion at 463 n. 5 (the mere possibility of termination as a result of death does not render statute of frauds inapplicable). The *Falconer* decision, in sum, finds little support in Texas case law.[4]

Recent opinions of the Texas appellate courts confirm that *Falconer* is an aberration. In *Morgan v. Jack Brown Cleaners, Inc.,* 764 S.W.2d 825 (Tex.App.—Austin 1989, writ denied), for example, the Austin Court of Appeals reaffirmed the established conclusion that the statute of frauds "does not bar indefinite term contracts." *Id.* at 827. The court of appeals reasoned that a trial court should not grant summary judgment on the basis of the statute of frauds unless the evidence establishes conclusively that the "employment contract must have lasted longer than one year." *Id.*

The opinion in *Morgan* is dated January 11, 1989, several months *before* the opinion

in *Falconer* was released. Accordingly, *Morgan* itself is not a *subsequent* state court decision that would authorize a departure from *Falconer. See Broussard,* 665 F.2d at 1389–90. The reasoning in *Morgan* was reemphasized, however, in a state court decision that is indeed subsequent to *Falconer.* In *Winograd v. Willis,* 789 S.W.2d 307 (Tex.App.—Houston [14th Dist.] 1990, writ denied), the Fourteenth District Court of Appeals in Houston acknowledged that "[t]he statute of frauds bars only those contracts which *must* last longer than one year." *Id.* at 311. While *Winograd* may be factually distinguishable from the instant case,[5] it nonetheless reaffirms the principles in *Morgan* and should not be ignored.

This writer is a strong believer in the doctrine of stare decisis. *See League of United Latin American Citizens Council No. 4434 v. Clements,* 914 F.2d 620, 653 n. 3 (5th Cir.1990) (Johnson, J., dissenting). In this case, however, I am convinced that a blind acquiescence to *Falconer* is a disservice to the Texas bench and bar, which has strived to formulate a workable articulation of the statute of frauds. The binding precedent in the instant case should be *Morgan,* as interpreted through *Winograd,* and not *Falconer.* I therefore dissent from the majority's disposition of the plaintiff's breach of oral contract claim. On all other claims, I concur with the majority opinion.

---

**4.** For that matter, *Falconer* finds little support in prior Fifth Circuit interpretations of the Texas statute of frauds. In *Mercer v. C.A. Roberts Co.,* 570 F.2d 1232 (5th Cir.1978), this Court, citing *Miller* and *Bratcher,* recognized that "where the time for performance of an oral agreement—including an oral employment agreement—is *uncertain* and performance can conceivably occur within one year, the statute of frauds is inapplicable, even if performance within the year is highly improbable." *Id.* at 1236 (emphasis added). Although *Mercer,* unlike *Falconer,* is distinguishable from the instant case, *Mercer* completes the picture of the aberrational nature of *Falconer: every court that has confronted the question, except the Fifth Circuit panel in Falconer, has recognized that the Texas*

*statute of frauds does not render indefinite term contracts unenforceable.*

**5.** The employer in *Winograd* orally agreed to provide employment at "an annual salary of $52,000." Like the contracts in *Miller, Bratcher* and *Morgan,* the contract in *Winograd* did not state a definite date of termination. As the *Winograd* court noted, however, Texas law "dictates that a hiring at a stated sum per week, month, or year, is a definite employment for the period named." 789 S.W.2d at 310. Nonetheless, the *Winograd* court departed from *Falconer* in its recognition that the statute of frauds only applies to oral contracts that *must* last longer than one year, whether or not the contracts state a definite period of duration.