Michael C. QUINN

v.

**WORKFORCE 2000, INC. and James E. Kincaid.**

Civ. A. No. 1:92–CV–456.

United States District Court,
E.D. Texas,
Beaumont Division.

May 31, 1995.

James Wimberley, Provost & Umphrey Law Firm, Beaumont, TX, for plaintiff.

Bruce Partain, Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, TX, for defendants.

## MEMORANDUM OPINION

RADFORD, United States Magistrate Judge.

Michael C. Quinn filed this lawsuit against his former employer Workforce 2000, Inc. and James E. Kincaid alleging that Defendants breached the employment contract with Plaintiff or, in the alternative, Defendants negligently, intentionally, or fraudulently misrepresented the nature and extent of the benefits to be provided to Plaintiff as a result of his employment with Workforce 2000, Inc.

The parties consented to have a United States Magistrate Judge conduct all further proceedings in this case, including the trial and entry of judgment, pursuant to 28 U.S.C. § 636(c). This matter came before the Court for a non-jury trial on October 31, 1994. The Court makes the following findings of fact and conclusions of law. Any conclusion of law more properly characterized as a finding of fact is adopted as such. Any finding of fact more properly characterized as a conclusion of law is adopted as such.

## I. FINDINGS OF FACT

Plaintiff, Michael C. Quinn ("Quinn"), is an individual who resides and has his domicile in Vidor, Texas. Defendant Workforce 2000, Inc. ("Workforce"), formerly known as P & J Consultants ("P & J"), is a Delaware Corporation with its principal place of business in North Carolina. Defendant James E. Kincaid ("Kincaid") is an individual who resides and has his domicile in North Carolina.

During the years of 1988 and 1989, Kincaid, in his capacity as President of P & J, the predecessor corporation of Workforce, held preliminary discussions with Quinn regarding a position of employment for Quinn with P & J. At that time, Quinn was employed by E.I. Dupont de Nemours & Co., Inc. ("Dupont") at their Sabine River Works Plant in Orange, Texas. Quinn was assigned to the "ADN" unit at the plant and his job responsibilities included coordinating the development of a functional job analysis, training, and testing program. Kincaid began recruiting Quinn to work in a similar capacity with P & J, a consulting firm which provided testing and training programs and functional job analysis on a contract basis to companies such as Dupont.

In the last quarter of 1989, Quinn and Kincaid exchanged written outlines concerning the terms of Quinn's employment. At all times during the negotiations, Kincaid was acting in his capacity as President of P & J. Although no formal written employment contract was drafted and signed by the parties, certain oral agreements were reached. Quinn and Kincaid agreed that Quinn would terminate his employment from Dupont and began working solely for P & J. Although no definite duration of employment was set, it was the intention of the parties that this

would be lifetime employment for Quinn.[1] Quinn hoped that he would retire from the job at Workforce and hoped to see his son involved in the corporation one day.

Despite evidence introduced that Quinn believed his initial salary to be $5,000.00 a month, the weight of the credible evidence indicates that Quinn and Kincaid had agreed that Quinn would start work at a salary of $4,500.00 a month. Other benefits agreed upon between the parties included a company car for personal and professional use, corporate luggage, six weeks vacation, a non-contributory life insurance policy, and medical insurance for the benefit of Quinn and his family. In addition to the medical insurance, Kincaid and Quinn agreed that P & J would reimburse Quinn for uninsured medical expenses incurred by Quinn and his family up to a cap of $2,000.00.[2] Kincaid also promised Quinn that he would be made an officer in the corporation and would serve on the Board of Directors of P & J. Although other benefits were discussed by the parties, a "meeting of the minds" was not reached on several issues. Kincaid represented to Quinn that he would participate in a profit sharing plan after he was employed with the corporation for a year. However, the structure of the profit sharing plan was never determined[3]. Quinn was told by Kincaid that in lieu of participation in the profit sharing plan, Quinn would receive an equivalent amount as a cash bonus in his first year. Regardless, bonuses would be awarded with no set frequency and would depend on the corporation's cash flow.

One of the major benefits promised to Quinn by Kincaid was ownership in the corporation. Although there was much discussion concerning the transfer or sale of corporate stock to Quinn, none of the negotiations amounted to an oral agreement. Furthermore, no written agreement was created which provided for the transfer or sale of stock. The issue of corporate ownership was never resolved because of a shareholder dispute which had arisen in the corporation. During 1989, Kincaid and his partner in P & J, Margaret Eastman ("Eastman"), became involved in a dispute over the corporation. Kincaid, the majority shareholder in the corporation, owned fifty-one percent of the common stock with Eastman owning the remaining forty-nine percent of P & J stock. Pursuant to the terms of a "buy-sell agreement" between Kincaid and Eastman, Kincaid initiated a buy-out of Eastman's stock. During the time in which Kincaid was recruiting Quinn to work at P & J, Kincaid advised Quinn of his attempts to obtain Eastman's stock and to remove her from the corporation. Kincaid represented to Quinn that no stock could be issued or purchased until the situation with Eastman had been resolved. Although Eastman was terminated as an officer and director of the corporation in the fall of 1989, an agreement to repurchase her stock was not reached before Quinn began work at P & J.

As a result of the oral agreements reached between the parties, Quinn voluntarily terminated his employment with Dupont and be-

---

1. The following exchange took place at trial during the cross-examination of Quinn by counsel for defendants:

 Q: Now, one of the things that I maybe missed in your testimony was about the length of your employment, sir. Do I understand that your employment was going to last beyond one year with Workforce?
 A: Yes, sir.
 Q: And you considered it a lifetime employment, sir?
 A: Absolutely.
 Q: And you considered it also to be—or excuse me. You considered it also not to be dependent on your job evaluation or performance, is that a fair statement?
 A: That's a fair statement.
 Trial transcript p. 142, lines 8–18.

2. Although Kincaid testified that the $2,000.00 of uninsured medical expenses did not include expenses incurred by Quinn's wife and children, the weight of the credible evidence indicates that Kincaid had represented that this amount would include Quinn and his family. Quinn testified that "[t]he offer as tendered and that I accepted was that my family and I wasn't even going to have to buy an as [sic] aspirin. That everything medical was going to be covered." Trial transcript p. 105, lines 21–24.

3. Quinn testified that "[t]here was an evolution of discussion on the whole structure of the profit sharing plan and that seemed to change every time it was discussed." Trial transcript p. 135, lines 2–4.

gan work with P & J[4] on February 1, 1990. Quinn started at a salary of $4,500.00 and was provided a company car[5], corporate luggage, and medical insurance. Quinn also eventually received non-contributory life insurance from the corporation. In February of 1990, Kincaid, as sole Board of Directors member, elected Quinn and another Workforce employee, M.D. "Doug" Childress ("Childress"), as Vice-presidents of the corporation and members of the Board of Directors. However, Kincaid did not inform Quinn of this action at that time. A few months later at the annual corporate meeting on April 23, 1990, Kincaid removed Quinn and Childress as officers and directors and elected himself as sole member of the Board of Directors and as all officers of the corporation.

An agreement to repurchase Eastman's stock was reached in June of 1990. The terms of Kincaid's purchase of Eastman's stock required Kincaid to pay $4,971.05 at closing and execute a promissory note in the principal amount of $33,000.00. The promissory note was to be paid out in monthly installments of approximately $1,200.00 to $1,300.00. Kincaid testified that after the agreement with Eastman was reached in June of 1990, it was his intention to neither issue nor sell any stock to Quinn or Childress until the promissory note was fully paid.

The professional relationship between Kincaid and Quinn began to deteriorate after the April 1990 meeting. Quinn voiced his objection to not being elected as an officer and director and to not receiving a bonus in April.[6] In June of 1990, Kincaid began considering whether he should "cut loose" Quinn

and Childress. As a result of the conflicts in the corporation, Childress resigned from Workforce effective the last day of August 1990, leaving Quinn as the remaining employee of the corporation. On or about September 4, 1990, Quinn received a raise from $4,500.00 to $5,000.00 a month based on his "improved work performance and the increased hours being worked on [one of the corporation's contracts]."[7] However, in the fall of 1990, Kincaid criticized Quinn for failing to meet production deadlines and for leaving a job-site without authorization. Kincaid eventually terminated Quinn on or about February 1, 1991.[8] At the time of his termination, Plaintiff had not received, whether by grant, purchase, or otherwise, common or preferred stock in Workforce. Additionally, Plaintiff did not receive any bonuses[9], contributions to a profit sharing plan, or compensation for unused vacation time. Although Quinn was also not reimbursed for uninsured medical expenses up to the agreed upon $2,000.00 limit, there is not sufficient evidence in the record to show that Plaintiff incurred these expenses.

## II. CONCLUSIONS OF LAW

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the controversy involves citizens of different states and an amount in controversy which exceeds $50,-000.00, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Eastern District of Texas, Beaumont Division. Plaintiff's cause of action involves solely state law claims which will be analyzed pursuant to Texas law.

---

4. At some time in 1990, the name of the corporation was changed to Workforce 2000, Inc. Hereinafter, the court will refer to the defendant corporation as "Workforce."

5. Although Quinn did not receive a company car of his choosing, he is not seeking any damages resulting from the failure of Kincaid to provide him with a car of his choice.

6. Kincaid testified that Quinn's work performance did not warrant a bonus at that time. However, the weight of the credible evidence indicates that Quinn did not receive a bonus in April of 1990 because Kincaid was bonusing the available corporate money to himself to cover

attorney fees and other expenses associated with the buy-out of Eastman's stock.

7. See, Plaintiff's Exhibit 21.

8. Although Quinn disputes Kincaid's reasons for firing him, Quinn is not seeking damages resulting from his termination.

9. During 1990, Childress received approximately $6,000.00 in bonuses and Kincaid received in excess of $27,000.00 from the corporation in the form of periodic bonuses. Kincaid testified that he received this money to cover attorney fees and other expenses associated with the buy-out of Eastman's stock.

 Quinn brought this action against Defendants based upon claims that Defendants breached the employment contract with Plaintiff or, in the alternative, Defendants negligently, intentionally, or fraudulently misrepresented the nature and extent of the benefits to be provided to Plaintiff as a result of his employment with Workforce. In addition to bringing suit against the corporation, Quinn has sued Kincaid in his individual capacity. In order to impose individual liability against Kincaid, Quinn must "pierce the corporate veil" and convince the court to disregard the corporate fiction. It is well settled that "[t]he corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations; but when these individuals abuse the corporate privilege, courts will disregard the corporate fiction and hold them individually liable." *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986) (citations omitted). However, the "basis for disregarding the corporate fiction ... is an independent ground of recovery that must be specifically pleaded or waived." *Villanueva v. Astroworld, Inc.,* 866 S.W.2d 690, 695 (Tex.App.—Houston [1st Dist.] 1993, writ denied), citing *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 688 (Tex.1991); and *Castleberry,* 721 S.W.2d at 275 n. 5. Quinn did not specifically plead or allege any basis for disregarding the corporate fiction and holding Kincaid individually liable. Moreover, Quinn has acknowledged in his post-trial memorandum brief that little evidence was introduced at trial to support the court's piercing of the corporate veil. Therefore, the court finds that Defendant James E. Kincaid is not individually liable for claims brought by Plaintiff. The court now turns to Plaintiff's two alternative grounds of recovery against the corporate defendant.

**(1) Breach of Contract:**

 The court has found and the parties concur that no written contract for employment exists between Quinn and Workforce. Additionally, the evidence shows and the parties concede that Quinn was employed "at will" by Workforce. In Texas, the doctrine of employment at will provides that employment for an indefinite term may be terminated at will and without cause. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991). Plaintiff admits that he could be terminated at any time by Workforce with or without cause and, therefore, is not seeking damages resulting from his termination.[10]

Plaintiff does seek damages for breach of the oral contract between himself and Workforce. The court has found that Quinn and Kincaid, in his capacity of President of the corporation, reached an oral agreement that Quinn was to be employed with P & J (later Workforce) at a starting salary of $4,500.00 and with certain benefits including a company car for personal and professional use, corporate luggage, six weeks paid vacation, a non-contributory life insurance policy, medical insurance for the benefit of Quinn and his family, reimbursement of up to $2,000.00 of noninsured medical expense incurred by Quinn and his family, and periodic bonuses. The court has also found that an agreement was not reached concerning a profit sharing plan and the sale or transfer of corporate stock. The court must determine if the oral contract between Quinn and Workforce is enforceable and whether Quinn can recover damages for those benefits not received, i.e., compensation for unused vacation time and bonuses.[11]

 In Texas, a contract for employment may be express or implied, oral or written. *Pioneer Casualty Co. v. Bush,* 457

---

10. The following exchange took place at trial during the redirect of Plaintiff by his attorney:
Q: Okay. There was nothing that would prevent him [Kincaid] from firing you after six months?
A: No.
Q: There was nothing to prevent him from firing you after a week?
A: That's correct.
Q: And, in fact, there was nothing in any agreement that prevents you from walking off any time you wanted to?
A: That's right.
Trial transcript, p. 198, lines 7–15.

11. The court will not consider Plaintiff's claim for reimbursement of insured medical expenses up to $2,000.00 since the court has found that sufficient evidence was not introduced to show that the expenses were actually incurred.

S.W.2d 165 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.). However, oral contracts are subject to the Texas Statute of Frauds which provides that an oral agreement which cannot be performed within one year from the date of its making is unenforceable. Tex. Bus. and Com.Code Ann. § 26.01(b)(6). (Vernon 1987). In order to determine whether an oral contract falls within the Statute of Frauds, the duration of the contract must be examined. *Morgan v. Jack Brown Cleaners, Inc.,* 764 S.W.2d 825, 827 (Tex.App.—Austin 1989, writ denied). Generally an employment contract for an indefinite term is not barred by the Statute of Frauds. *Id.* However, courts applying Texas law have held that oral promises of lifetime employment or employment until retirement are barred by the Statute of Frauds because the agreement cannot be performed within a year. *Pruitt v. Levi Strauss & Co.,* 932 F.2d 458, 464 (5th Cir.1991). *See also, Crenshaw v. General Dynamics Corp.,* 940 F.2d 125, 128 (5th Cir.1991); *Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 472–73 (5th Cir.1991); *Falconer v. Soltex Polymer Corp.,* No. 89–2216, 886 F.2d 1312 (5th Cir. Sept. 12, 1989) (unpublished opinion); and *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 407 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). This court has found that the parties agreed that Plaintiff's employment with Workforce was to be lifetime employment. Accordingly, Quinn's oral employment contract with Workforce is unenforceable as barred by the Statute of Frauds.[12]

### (2) Negligent, Intentional, or Fraudulent Misrepresentation:

 In the alternative, Plaintiff has alleged a tort action in which he claims that Defendants negligently, intentionally, or fraudulently misrepresented the nature and extent of the benefits to be provided to Plaintiff as a result of his employment with Workforce. The court recognizes that an action may sound in both contract and tort. *See, National Union Fire Ins. v. Care Flight Ambulance,* 18 F.3d 323, 326 (5th Cir.) ("Texas cases also recognize that when certain legal relationships exist between contracting parties, the law may impose affirmative duties that are separate and apart from the contractual promises made between those parties."), *cert. denied,* —— U.S. ——, 115 S.Ct. 293, 130 L.Ed.2d 208 (1994). In order to state a tort claim independent from a contract claim, Plaintiff must show a breach of a duty imposed by law rather than just a duty imposed under the contract. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991) ("Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others.") In *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617 (Tex.1986), the Texas Supreme Court held that:

> [t]he acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone.

One cannot convert what is essentially a contract claim into a tort claim in order to avoid the effect of the Statute of Frauds. *Federal Land Bank v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (stating that a claim of negligent misrepresentation may not be used to circumvent the Statute of Frauds) and *Nagle v. Nagle,* 633 S.W.2d 796, 801 (Tex.1982) (reversing a jury's finding that defendant fraudulently induced plaintiff to sign a contract when the contract itself was found to be unenforceable due to the Statute of Frauds). The court must look to the origin of the duty owed and the nature of the injury to determine whether Plaintiff can maintain an action in tort.

---

12. Plaintiff cites *Goodyear Tire and Rubber Co. v. Portilla,* 836 S.W.2d 664 (Tex.App.—Corpus Christi 1992), *aff'd* 879 S.W.2d 47 (Tex.1994), in support of his argument that the Statute of Frauds does not prevent the oral contract in this case from being enforced. Without deciding the value of *Portilla* as precedent in light of the Fifth Circuit's holding in *Pruitt,* the court finds that *Portilla* is distinguishable in that the plaintiff, unlike Quinn, did not allege that she would have a job until she retired. The issue in *Portilla* was the enforceability of oral promises that she would retain her job as long as she performed satisfactorily. No such agreements were made in the case at bar.

In the present case, Plaintiff sued over Defendant's breach of its promise to provide Plaintiff with certain benefits incident to his employment. Plaintiff has not shown a breach of a legal duty outside of the duties imposed in the contract. Plaintiff's alleged injury is the economic loss of benefits derived from the oral contract of employment. Plaintiff clearly seeks to recover "benefit of the bargain damages," i.e. bonuses, unreimbursed expenses, etc. In order to support an action for fraud or misrepresentation, Plaintiff must show out-of-pocket damages or pecuniary losses, not just the loss of the benefit of the contract. *Camp v. Ruffin,* 30 F.3d 37, 38 (5th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 1314, 131 L.Ed.2d 195 (1995). Since Plaintiff has failed to show any damages other than contract damages and has failed to show the breach of a legal duty outside of any contractual duties, the court concludes that Plaintiff's claim of misrepresentation must also fail.

**(3) Conclusion:**

Although Plaintiff was able to prove to the court that an oral contract of employment was reached with Defendants, the court has found that the oral agreement is barred by the Statute of Frauds. Additionally, the court has found that Plaintiff failed to show an alternative basis of recovery in tort. Accordingly, judgment is rendered in favor of the Defendants.